[Filed November 29, 1886.]

## PORTLAND AND WILLAMETTE VALLEY R. R. CO. *v.* CITY OF PORTLAND.

Grant—License—Dedication — Public Use—Constitutional Law—Legislative Power—Municipal Corporation—Streets and Public Places.—The premises in controversy, known as the Public Levee, in the city of Portland, prior to the year 1865 were dedicated by the owner to the public use as a levee or public landing.  The legislative assembly in 1885 (Session Laws, p. 100), granted said levee to the plaintiff, to be held, used, and enjoyed for occupation by track, side track, water stations, depot buildings, wharves, warehouses, and such other buildings and erections of such form and manner of construction as may be found requisite, necessary or convenient in receiving, shipping and storing of freight, etc., and for use in the manner usual for depot purposes; and as such to be under the exclusive management and control of the owners of said railroad, with power to sell the same as appurtenant to said railway, etc.; and provided that said company shall never charge dockage to any boat, ship or vessel while actively engaged in receiving or discharging cargo at the wharf which may be erected on said premises.  *Held:*

(1) That said act constituted a license to said railroad company to use said premises for the purposes named, upon the conditions specified.

(2) That such grant or license is not inconsistent with the use to which the property had been dedicated, but is in aid of such use.

Same.—The property or easement which a city has in its streets or public places is not private property, in the sense that it cannot be taken for a public use, except upon just compensation; but it is public, and the power of regulating the use thereof, as such, resides in the legislature.

Same—Injunction.—The power of the legislature over property dedicated to a public use is not absolute. It may regulate the use of such property, or promote its improvement, but cannot divert or subject it to any use clearly inconsistent with the contract of dedication. And upon such diversion, any person interested would be authorized to institute proper proceedings to enjoin it.

Multnomah County. Plaintiff appeals. Reversed, and remanded for further proceedings.

*C. J. McDougall* and *J. M. Bower*, for Appellant.

The jurisdiction of the lower court to try this case is unquestionable. (Const., Art. VII, § 9; Misc. Laws, Chap. VII, Title 3, p. 533; Sess. Laws, 1885, pp. 100–105.) Any other view would render the act of 1885 nugatory, a result which courts will always avoid, if possible. (*Cooper* v. *Telfair*, 4 Cranch. 167; *Simmons* v. *California Powder Works*, 7 Colo. 285.) The levee in question was donated to the public, and the act devotes it to a use not inconsistent with that for which it is claimed to have been dedicated. (*Coffin et al.* v. *Portland*, 27 Fed. R. 420.) The city of Portland can be nothing more than a trustee of the property. A grantee is not necessary. (*The City of Cincinnati* v. *White's Lessee*, 6 Pet. 431; *Coffin et al.* v. *Portland, supra.*) The state possesses the right of eminent domain as a necessary attribute of sovereignty, and determines the necessity for the taking, and there is no restriction to this power except the constitution. (*Smeaton* v. *Martin*, 57 Wis. 364; *U. S.* v. *Or. R. and Nav. Co.*, 16 Fed. R. 524; *Weir* v. *St. Paul's and R.. Co.*, 18 Minn. 155; *Bloomfield Gas Co.* v. *Richardson*, 63 Barb. [N. Y.] 437; *Talbot* v. *Hudson*, 16 Gray, 417; *Moody* v. *Jacksonville T. and R. Co.*, 20 Fla. 597.) The taking of property for rights of way and terminal purposes for railway companies is a pub-

lic use. (*Or. & Cascade R. Co.* v. *Baily*, 3 Or. 165 ; *Stockton &c. R. Co.* v. *Stockton*, 41 Cal. 147 ; *Chicago and W. I. R. Co.* v. *Ayres*, 106 Ill. 511 ; *Cairo &c. R. Co.* v. *Turner*, 31 Ark. 494.) Corporate franchises may be taken like other property, in the exercise of the right of eminent domain by the state. And the same rule applies to lands held for a public purpose. (*Phila. and Gray's Ferry Pass. R. Co.'s Appeal*, 102 Pa. St. 123 ; *Re Towanda Bridge Co.*, 91 Pa. St. 216; *Sugar R. Co.* v. *Mayor etc. Jersey City*, 26 N. J. Eq. 247 ; *Jersey City &c. R. Co.* v. *Jersey City &c. Co.*, 20 N. J. Eq. 61.) Even contracts and legislative grants, which are beyond ordinary legislation, are not exempt. (*N. Y. & R. Co.* v. *Boston & R. Co.*, 46 Conn. 196.) The use proposed is not inconsistent with that to which it was devoted. (*Mankato* v. *Willard*, 13 Minn. 12 ; *Moses* v. *P. and Ft. W. and C. R. R.*, 21 Ill. 516 ; *Murphy* v. *City of Chicago*, 29 Id., 286 ; *The People* v. *Kerr*, 27 N. Y. 194 ; *Barney* v. *Keokuk*, 94 U. S. 324 ; *Miller* v. *Long I. R. R. Co.*, 10 Fed. Rep. 197 ; *Milburn et al.* v. *City of Cedar Rapids etc. R. R.*, 12 Iowa, 246 ; *Cadle* v. *Muscatine &c. R. R. Co.*, 44 Ia. 11 ; *Phillips* v. *Dunkirk etc. R. R. Co.*, 78 Pa. St. 177.)

*A. H. Tanner*, for Respondent.

Where property has been dedicated by the owner to a public use, the right of the dedicator and of the abutting property owners, to have the property used for the purpose for which it was dedicated, must be protected against invasion and diversion to other inconsistent uses. As to the rights of the dedicator and abutting owners in such instances, we cite : (*Trustees of Watertown* v. *Cowen*, 4 Paige, Ch. 510 ; *Rowan's Executors* v. *Portland*, 8 B. Mon. 232 ; *Godfrey* v. *City of Alton*, 12 Ill. 29 ; *Chapman* v. *Wilbur*, 4 Or. 362 ; *Adams* v. *S. & W. R. R. Co.*, 11 Barb. 414 ; *Coffin et al.* v. *City of Portland*, 27 Fed. Rep. 420 ; *Railroad* v. *Schurmeier*, 7 Wall. 272–289.) If an act concerning such property is unconstitutional and void as to the dedicator and abutting property owners,

it is void also as to the city, which is the trustee of the dedica-
tor, the representative of the abutting owners, and the people
of the city generally. (*Jacksonville* v. *Railway Co.*, 67 Ill.
540; *Price* v. *Thompson*, 48 Mo. 333; *John and Cherry
Streets*, 19 Wend. 659; *Le Clercq* v. *Gallipolis*, 7 Ohio, 217;
*Trustees of Watertown* v. *Cowen*, 4 Paige, Ch. 510.) The
act is unconstitutional, because it fails to provide for making
compensation to the abutting property owners, or to the dedica-
tor or his heirs. They have a property in the premises which
cannot be taken without compensation. (*Lackland* v. *R. R.
Co.*, 31 Mo. 180; *Matter of John and Cherry Streets*, 19
Wend. 659; *Terre Haute and R. R. Co.* v. *Rodel*, 89 Ind.
,128; S. C. 46 Am. Rep. 164; *Warren* v. *Mayor of Lyon City*,
22 Iowa, 356, 357; Mills, Em. Do., Sec. 51.) When a street
dedicated for purposes of travel is appropriated to the use of a
railroad, provision must be made for compensating the abutting
owner, where the track is simply laid along the street, upon
the ground that it imposes an additional burden upon the fee.
(*Mollandin* v. *Union Pacific R. R. Co.*, 14 Fed. Rep. 394;
1 Redfield on Railways, pp. 314 to 326, and cases cited; Cooley
Const. Lim., p. 547 *et seq.*) A railroad company cannot be
authorized to establish its depot in a public street, and erect
permanent buildings thereon, and obstruct and close up the
street, without at the same time providing for compensation to
the owner of the fee, if it can be done at all. (*Mahady* v.
*Bushwick R. R. Co.*, 91 N. Y. 149; *Barney* v. *Keokuk*, 94
U. S. 342; *State* v. *Laverack*, 34 N. J. L. 201.)

Lord, C. J.—This action was brought under an act of the
legislative assembly to condemn and appropriate what is known
as the public levee, in the City of Portland, to the use of the
plaintiff, for the purposes therein stated. (Sess. Laws, 1885,
p. 100.) It appears from the act that originally the piece of
land in dispute was dedicated to the public use as a levee or
public landing by Stephen Coffin, who subsequently, by deeds
in 1865 and 1871, which were duly recorded, conveyed the
same to the city of Portland. What right or estate remaining

in Coffin after the dedication was intended to be conveyed by these deeds, is not disclosed by the act or this record. It was assumed, however, in the argument and in the brief, that the city held the levee tract in trust for the use of the public as a levee or public landing. The act itself is justly deserving of the criticism to which Mr. Justice Deady subjected it. As he said, "It is largely a mass of senseless and redundant verbiage," and this applies directly and forcibly to all that part of the act devolving upon us to consider. (See *Coffin* v. *City of Portland*, 27 Fed. Rep. 418.) Among other things, the levee tract is granted to the plaintiff by the act, " to be held, used and enjoyed for occupation by track, side track, water stations, depot buildings, wharves, warehouses, and such other buildings and erections, of such form and manner of construction as may be found requisite, necessary or convenient, in receiving, shipping and storing of produce, goods, wares, merchandise, and generally of all kinds of freights, and for use generally, and in the manner usual and ordinary for depot purposes; and as such to be under the exclusive management and control of the owners of said railroad," etc., and with power to sell the same " as appurtenant to said railway," etc., and that " said company shall never charge dockage to any boat, ship or vessel, while actively engaged in receiving or discharging cargo at the wharf which may be erected on said premises," etc.

It would not be difficult to give this language a construction so as to effect a purpose which the legislature could not authorize. But it does not follow that the act is void because something might possibly be attempted under it, and seem to be covered by it, in consequence of the broad language used, which the legislature could not give a legal right to do. It is our duty, if the act will admit of a construction which will justify it, to sustain it. The intendments in favor of the validity of an act of the legislature must prevail, until its provisions are necessarily void. The main purpose and purport of the act was succinctly stated by Mr. Justice Deady, in *Coffin* v. *City of Portland*, *supra*, in which he said that the act was " a grant or license to the Portland & Willamette Valley Railroad Co.,

then and now engaged in constructing a road between Portland and Dundee of the use of the levee for a depot, and the wharves and warehouses necessary and convenient for receiving, storing and shipping freight, on condition, among others, that said company shall not charge any vessel for ' dockage,' while receiving or discharging cargo at any wharf on the premises."

It is contended principally, (1) that the act is void in authorizing the plaintiff to do what the legislature is without power to authorize; and (2) that it is void, because the use to which the act devotes the property, or authorizes the plaintiff to devote it, is inconsistent with the use to which it is already dedicated. The plenary power of the legislature over public corporations, except as to vested rights of property, and of creditors, is indubitably established. (*Dartmouth College Case*, 4 Wheaton, 519.) "Municipal corporations," said Dillon C. J., " owe their origin to, and derive their powers and rights wholly from, the legislature. It breathes into them the breath of life, without which they cannot exist. As it creates, so it may destroy. If it may destroy, it may abridge and control. Unless there is some constitutional limitation on the right, the legislature might, by a single act, if we can suppose it capable of so great a folly and so great a wrong, sweep from existence all the municipal corporations in the state, and the corporations could not prevent it. We know of no limitation on this right, so far as the corporations themselves are concerned. They are, so to phrase it, mere *tenants at will* of the legislature." (*City of Clinton* v. *Cedar Rapids and Mis. R. R. Co.*, 24 Iowa, 456.) But while the municipality exists, as to private property which it may have been allowed to acquire under its charter, such property is, doubtless, as much protected by the constitution as the private property of the citizen. Nor can the legislature deprive the city of such property, except it be for public use, and only then upon just compensation. But the easement or property which the city has in public streets or public places is of a different character. It is not private property of the city, nor can the city sell or use it for other than proper public purposes. The city might sell the market house,

or appropriate it to some other municipal use; but it cannot sell its streets, nor use them for other than the legitimate purposes connected with such use. Over these—all streets and highways, and public places and their uses—the plenary power of the legislature, in the absence of special restrictions, has been often asserted in several leading cases. In *Commonwealth* v. *Erie & Northeast R. R. Co.*, 27 Pa. St. 354, Black, C. J. said: "The right of the supreme legislative power to authorize the building of a railroad on a street or other public highway is not now to be doubted. It has been settled, not only in England (*King* v. *Pease*, 1 Barn. & Ald. 30) but in Massachusetts, (*Newburyport Turnpike Corp.* v. *Eastern R. Co.*, 23 Pick. 328) New York (*Drake* v. *Hudson River R. R. Co.*, 7 Barb. 509) and in Pennsylvania (*Philadelphia* v. *T. R. Co.*, 6 Whart. 43). If such conversion of a street to purposes for which it was not originally designed does operate severely on a portion of the people, the injury must be borne for the sake of the far greater good which results to the public from the cheap, easy and rapid conveyance of persons and property by railway. The commerce of a nation must not be stopped or impeded for the convenience of a neighborhood."

The interest in the use of streets and highways, and public places, and their uses, being *publici juris*, the power of regulating such use is in the legislature, as the representative of the whole people. It is a part of the political or governmental power of the state, in no way held in subordination to the municipal corporation. It has, therefore, been held in many cases that the legislature has the power to authorize the building of a railroad on a street or highway, and may directly exercise this power, or devolve it upon municipal authorities. (*Moses* v. *Railway Co.*, 21 Ill. 516; *Murphy* v. *Chicago*, 29 Ill. 279; *Mercer* v. *Railway Co.*, 36 Pa. St. 99; *Springfield* v. *Railroad Co.*, 4 Cush. 63; *People* v. *Kerr*, 27 N. Y. 188; *Lackland* v. *Railroad Co.*, 31 Mo. 180; *City of Clinton* v. *Railroad Co.*, *supra.*)

The decisions, however, are not entirely harmonious, where the public have only an easement in the street or highway;

and in some of the cases it has been held, as against the proprietor of the soil, the use of the street or highway for the purposes of a railroad created an additional burden or servitude, which, under the constitution, he could not be deprived of without compensation. (*Ford* v. *Chicago and N. W. R. R. Co.*, 14 Wis. 616 ; *Pomeroy* v. *Chicago and North Western R. Co.*, 16 Wis. 640; *Gray* v. *St. Paul and P. R. Co.*, 13 Minn. 315 ; *Williams* v. *Natural Bridge P. R. Co.*, 21 Mo. 580.) And this, Judge Cooley says, appears to be the weight of authority. (Cooley's Const. Lim. 549.) But where the fee of the streets is in the city corporation, and not in the adjoining owner, a different rule has been applied. (*Moses* v. *Pittsburg, Ft. W. & C. R. R. Co.*, 21 Ill. 516; *Protzman* v. *I. & C. R. Co.*, 9 Ind. 467 ; *People* v. *Kerr, supra* ; *Clinton* v. *C. R. & M. R. R. Co., supra*; *Lexington & Or. Co.* v. *Applegate*, 8 Dana, 289. See, also, Cooley, Const. Lim. 555, and notes.)

It may be—it is not necessary for us to decide the question—that private citizens owning adjoining property may have rights or estate in or to the use of streets or public places over which the power of the legislature is not supreme or plenary. Whatever their rights may be, we are not required to consider upon this record. They are not parties, and their interest cannot be affected by this proceeding. All that we are required to consider is, the rights of the defendant, a municipal corporation; and, as we have seen, these rights the defendant holds subject to the supreme will of the legislature, as the representative of the people; and that, so far as regards the defendant, its streets and public places, and their uses, are not the private property of the municipality, in the sense that the legislature cannot authorize the same to be used for a public purpose unless it makes compensation to the city for such use. In *People* v. *Kerr, supra*, Emott, J., said : "The title (in the streets) thus vested in the city of New York is as directly under the power and control of the legislature, for any public purpose, as any property held directly by the state or any public body or officers; and its application cannot be challenged

by a corporation (the city) which, in respect to such property, at least, is a mere agent of the sovereign power of the people." And in concurring, Wright, J., said : " I am clearly of the opinion that the city corporation has no property in the streets, of a character to be protected by the constitutional limitation on the right of eminent domain."

The principle deducible from these authorities is, that when property is acquired by the exercise of the right of eminent domain, on payment of its value from the public funds, or by dedication under a statute, where the fee to the soil passes out of the dedicator over the use of such property, so far as the municipal corporation is concerned, the legislature possesses unlimited control. It is immaterial whether the fee of the street is in the public, or in the city in trust for the public ; as then the city would not hold the fee for itself or its inhabitants only, but for the public generally, including its own inhabitants ; the power of the legislature to authorize the use of the same by a railroad, without the consent of the city, and without compensation to it, is undeniable. The reason is plain. The streets are not the private property of the corporation. It owns no property in them, in the sense or of a character to be protected by the constitutional limitation on the right of eminent domain. It results as a consequence of the unlimited power of the legislature, in the absence of special restrictions, not only over the existence of the municipality, but, while it allows it to exist, over its streets and public places held for the use and benefit of the general public. By analogy, these principles of the law are alike applicable to other property held by the city for the general public, such as levees or public landings. Unless there is something in the particular facts and circumstances to take such property, devoted to public use, out of these general principles, it will be governed and controlled by them.

In the case now in hand, the levee was unconditionally dedicated to the public use as a public landing. When this was done, there remained in the dedicator the legal title, to which, so to speak, was attached and vested in him every right of

use or of property not inconsistent with the use he had given to the public.    In a word, it may be used for the use to which he dedicated the property, viz., as a levee or public landing. Any other use inconsistent with that use belonged to him.    To this property, thus dedicated to the public use, the dominion of the legislature attached, but its power over it is not supreme ; it might regulate its use or promote its improvement, but it could not divert or subject it to any use clearly inconsistent with the purposes of its dedication.    To do that would violate the contract of dedication, and any person interested would be authorized to institute proper proceedings to enjoin it.    Nor is it perceived that, so far as regards the defendant corporation, the holding of the title by it in trust for the use of the general public, as a levee or public landing, makes any difference.    The corporation holds only in trust—in subordination to the con-tract of dedication—for the use of the general public as a levee or public landing.    The city does not own it, nor can it sell or dispose of it, or divert it to any private use.    Such a title is a holding for a public use—is public property, to be used in subordination to the use for which it is dedicated—and is not private or municipal property.    To this extent, then, it may be said that whatever interest or estate the city may hold in the levee is essential and wholly public, and not private property, and that the city in holding it is the agent or trustee for the public, and not a private owner for profit.    It is a title conferred on it by the dedication for the benefit of the pub-lic to the uses granted, and not of private ownership, which comes within the constitutional limitation on the right of em-inent domain.    It results that the legislature may regulate its use, or devolve it upon the defendant or the plaintiff as its agent, in conformity with the purposes of the dedication, with-out the consent of the city and without compensation to it. The legislature may, therefore, authorize the doing of the things by the plaintiff prescribed by the act, within the limitations indicated.    It cannot itself do, or authorize the defendant or plaintiff, nor can either of them do, anything to divert or sub-vert the use to which the levee is already dedicated. The things

to be done under the act must be consistent with the use of the levee as a public landing, and it is only in this sense that the act can be upheld.

Are the things authorized to be done under the act clearly inconsistent with the use of the levee as a public landing? As we have construed the act, it only in effect purports to grant to the defendant—to adopt the language of Mr. Justice Deady —"The right to improve and use the premises as a public landing, with the added facility of direct and immediate railway connection therewith." Now, will not the construction of wharves and warehouses, at which vessels may load and discharge cargo, be rather an improvement of its use as a levee or public landing, than its subversion as such? Are not these things, in fact, necessary and essential to afford proper facilities to the public, and make the levee of any value and benefit as a public landing? Are they not in accord with the general purposes for which the property was dedicated? Do they not, in fact, contribute to give it more identity as a public landing, and render the use it was dedicated to serve more beneficial to the general public?

Nor does the construction of a depot thereat, in connection with the railway, subvert or destroy its use as a public landing, nor is it inconsistent therewith; but, within proper limitations, it may tend to improve and make the use of the levee, as such, more beneficial. "A landing is a place on a river, or other navigable water, for lading and unlading goods, or for the reception and delivery of passengers." (*State* v. *Randall*, 1 Strobt. 111.) "It is either the bank or the wharf, to or from which persons or things may go from or to some vessel in the contiguous waters." (*State* v. *Graham*, 15 Rich. 310. See also, *Coffin* v. *City of Portland, supra.*) Now, are not all these things, and may they not be so constructed—wharf, warehouse and depot—as proper incidents to a public landing, which improve and faciliate its use, extend its benefits to a larger public, and make it more suitable for the accommodation of passengers, and the stowing and shipping of general freight? The legislature, as the representative of the general public, has

the right to regulate its use and improve the same, consistent with the purposes of its dedication ; and it may do this directly, or authorize the defendant to do it as agent of the state.   If, then, these structures may be built to improve the landing, and make its use more beneficial to the general public, and are not inconsistent with the use ·to which the levee was dedicated, what right in this property of the city, as trustee, is affected, which entitles it to compensation, or to be protected by the constitutional limitation on the right of eminent domain ?   As Mr. Justice Deady said : " As Portland has no ' pecuniary ' or other right in this property, except as trustee, and then only so far as the legislature may provide or permit, it is not apparent what claim it can have for damages, in consequence of the appropriation to such uses and purposes."   But my associates, while not disagreeing as to this result on the theory of condemnation, suggest and think that it was the intention of the legislature, by the act, to idemnify the city for any improvements, money expended on the levee, paid out on same, or interest acquired by the deeds, (which is not disclosed by this record) as damages ; and that the proceeding, although in the form of condemnation, is for this purpose ;  and that in such case the state has a right to prescribe such conditions, although, without manifest intention to indemnify, the result would be otherwise.   The judgment must be reversed, and the cause remanded for further proceedings.