CORNELIUS T. DRISCOLL vs. THE CITY OF NEW HAVEN
ET AL.

*First Judicial District, Hartford, May Term, 1902.
TORRANCE, C. J., HAMERSLEY, HALL, PRENTICE and CASE, Js.

An agreement or understanding with a municipal board which is powerless to act in the premises, is of no effect, either at law or in equity, unless it is confirmed or ratified by the acts or conduct of duly authorized representatives of the municipality.

The board of park commissioners of the city of New Haven has no power to bind the city in a matter relating to the acquisition or sale of lands. Under its charter that power resides alone with the court of common council.

Said commissioners desired to obtain certain land for park purposes, which was owned by a charitable institution and could not be sold. B also wanted a small portion of it for his private uses, and it was finally understood that the board should induce the city to condemn the tract, for a sum mutually agreeable, and that afterward B should receive a deed of that part of the tract he desired, upon payment of a stated sum. Acting on the recommendation of the park commissioners the city condemned the land, knowing that B expected to

---

*Transferred from third judicial district.

buy a portion of it for the price agreed upon between him and the park board. Upon an application for an injunction by a citizen and taxpayer to restrain the city from conveying any part of the land to *B*, it was *held:* —

1. That the city's action placed it under no legal or equitable obligation to *B*, even if it did acquire the land with the then definite purpose of letting him have a portion of it. Such purpose it was free to change or to adhere to at its pleasure, without judicial intervention by injunction or otherwise.

2. That the execution of *B's* agreement with the park commissioners inevitably involved an unlawful exercise of the power of eminent domain, embodying, as it did, a thinly disguised attempt to take, by process of law, property for a private use; and therefore a court of equity would not decree the specific performance of the agreement, although the immediate parties in interest were willing that such action should be taken.

3. That by its condemnation proceedings the city acquired a title in fee to the land, the Special Act authorizing it to take such an estate and the uses for which the tract was taken being inconsistent with the continued existence and exercise of any of the incidents of private ownership.

4. That the General Assembly had the power to authorize the city to sell and convey the whole or any portion of the land thus condemned, free from any public trust.

5. That it was not essential that the Special Act which authorized the city to sell a portion of the condemned land to *B* (Special Acts of 1901, p. 1206) should describe that portion with all the particularity or precision which might be required in the deed given pursuant to such authority.

6. That such Act was not unconstitutional as an attempt to give *B* "an exclusive public emolument or privilege."

The legislature may determine the estate or quantity of interest which shall be taken by condemnation, and may authorize the taking of a fee as well as an easement only.

The uses for which a public park is acquired are continuous and peculiarly exclusive, and therefore ordinarily require the taking of an estate in fee.

Argued May 8th—decided June 11th, 1902.

SUIT for an injunction to restrain the city of New Haven from selling or conveying certain land to either one of two of its codefendants, brought to the Superior Court in New Haven County; cross-complaint by said codefendants praying that the city be required to make said conveyance to one of them; demurrers to both the complaint and cross-complaint;

case reserved by the court, *Case*, *J.*, for the advice of this
court upon the questions of law involved.

The plaintiff brings his action as " a citizen, resident, tax-
payer, and voter " of the defendant city.

In 1900, the board of park commissioners of the defendant
city was desirous of acquiring for park purposes a tract of
land containing about nine acres, as an addition to one of its
parks. The land was and for many years had been owned
by the Hartford Retreat for the Insane, which, by the terms
of gift to it, it could not alienate. For more than twenty-
five years the firm of A. Beecher & Sons, of which the de-
fendant L. W. Beecher was a member and manager, and its
successor, the Diamond Match Company, for which company
said L. W. Beecher continued to act as local manager, had
been the lessees of said tract, and as such lessees had erected
upon the southwest corner thereof, adjacent to their main
factory buildings, certain buildings for the uses of their busi-
ness. These buildings, by the terms of the tenancy, re-
mained the property of the lessees and were removable at
their pleasure.

Said Retreat for the Insane was willing, save for their le-
gal inability, to sell the land in question, and being impor-
tuned by the park commissioners had agreed to make no
objection to a condemnation for an award of $5,000.

This amount the park commissioners felt unable or un-
willing to pay, and approached Mr. Beecher to help them out
of their difficulty. Beecher agreed, with the understanding
and agreement that if he succeeded in obtaining a satisfactory
price the lease to his concern should be surrendered and
about two acres of the tract—being that portion upon which
said buildings stood—should, after condemnation, be con-
veyed by the city to him for a sum to be paid by him, which
sum was later fixed at $700.

Through and by reason of the intervention of Beecher, the
Retreat consented that said tract might be condemned for an
award of $3,000, which was acceptable to the park commis-
sioners.

The park commissioners thereupon, on July 13th, 1900,

passed a vote preparatory to the condemnation of the land and appropriated the sum of $700 towards the cost, with the condition that the city appropriate $1,600 and Beecher pay $700. In this vote it was stipulated that after condemnation a portion of the land—being that occupied by the buildings as aforesaid and indicated upon the commissioners' map by a red line, and being two acres more or less in area—should, in consideration of said payment by Beecher and upon the authority of the General Assembly, be conveyed to him.

The park commissioners thereupon caused a petition, signed by one of its members, to be presented to the court, of common council for the comdemnation of the property. This petition stated the desire of Beecher to have a conveyance of about two acres of the land where the buildings stood, and his willingness to pay $700 therefor. It represented that the Retreat was agreeable to this course, and that there were good reasons in fairness and equity why the conveyance should be made if legislative authority could be had therefor, for which it was recommended that application be made at the next session of the General Assembly.

The common council caused proceedings to be had in due course for the condemnation of the land; the requisite survey was made, benefits appraised, and damages awarded, as provided by the city charter, and the layout accepted and adopted by the court of common council, and the award to the Retreat for the Insane, to wit, $3,000, paid by the city.

The city having acquired the whole tract as aforesaid, steps were taken looking to the conveyance of the two acres to Beecher. These proceedings need not be set out in detail, except to say that they furnished justification for the allegation of the complaint that the city was threatening to make the conveyance upon his payment of the sum of $700. Authority for such action had not, however, been conferred by the court of common council when these proceedings were begun, and has not since.

At the instance of Beecher the General Assembly of 1901, with the approval of the governor, passed the Special Act recited in the opinion.

March 8th, 1901, and subsequent to the completion of the condemnation proceedings, the board of park commissioners rescinded such portion of its votes of July 13th, 1900, as referred to the contemplated payment by Beecher of $700 and the conveyance to him of any part of said tract acquired by said proceedings. It was subsequent to this time that the steps looking to the conveyance to Beecher hereinbefore referred to were begun.

Prior to July 13th, 1900, said board of park commissioners had caused a map to be made of the entire nine-acre tract of land aforesaid. Upon this map the buildings of the Diamond Match Company thereon were designated, and a red line was drawn to indicate that portion of the tract which by the agreement between the commissioners and Beecher was to be conveyed to the latter. In like manner this two-acre portion is indicated upon the map made by the city engineer in the process of the condemnation proceedings. There never has been any misunderstanding or dispute as to the precise location and boundaries of this piece which was the subject of the negotiations between the commissioners and Beecher.

*A. Heaton Robertson* and *Hobart L. Hotchkiss*, for L. Wheeler Beecher and the Diamond Match Company (defendants).

*Leonard M. Daggett*, for the city of New Haven (defendant).

*E. P. Arvine* and *John K. Beach*, for the plaintiff.

PRENTICE, J. The defendants Beecher and the Diamond Match Company are not entitled to the relief which they ask for in their cross-complaint. The court of common council of the defendant city has never voted to sell or convey, or authorized the sale or conveyance, of the land in question. No other officer or board has the power to do so. The contention of these moving defendants against the city must therefore rest upon equitable considerations alone. There must appear to have been some agreement, inducement, or conduct on the

city's part, which has reasonably influenced its said codefend-
ants to action which would work to their injury if the city
is not now compelled to do what it had thus led them to be-
lieve it would do.

This agreement, inducement, or conduct, must have been
that of representatives of the city authorized to bind it in the
matter in question, or an agreement, inducement, or conduct
by others, so confirmed or ratified by these proper represent-
atives as to have become binding upon the city as the acts of
these representatives. Unauthorized agents or representa-
tives can of themselves alone no more bind equitably than they
can legally. *Turney* v. *Bridgeport*, 55 Conn. 412.

In the matter in question, which relates to the acquisition
and conveyance of lands, the court of common council alone
had power to bind the city. The city charter gives to the board
of park commissioners certain important powers and imposes
upon them certain important duties. Neither the acquisition
nor the sale of lands, however, is among them. Such was not
only the fact, but every one who dealt with the board was
bound to have knowledge of the fact. So the defendant
Beecher, when he negotiated with the board or its president,
was bound to know the limitations upon their powers. He
was bound to know that the court of common council of the
city alone could make a binding agreement with him of the
character of that alleged to have been made. He had no right
to rely upon any agreement made by other city officials, and
can therefore base no equity enforceable in the courts upon
such an agreement. *Turney* v. *Bridgeport*, 55 Conn. 412.

When we look to the allegations of the cross-complaint for
facts which are brought home to the court of common council,
either as growing out of its own action, or the ratification,
express or implied, of the action of others, we see at once how
barren they are of all that which lays a foundation for the
equitable relief prayed for. We find that upon the petition
and recommendation of the park commissioners it condemned
and took the Retreat tract for park purposes. We find
that it was advised that Beecher and his principal desired to
acquire about two acres of the tract—being that portion of it

upon which their buildings stood; that they were willing to pay $700 for it, which amount the commissioners regarded as a fair proportionate price; that the directors of the Retreat were agreeable to this arrangement, and that there were good reasons in fairness and equity why the desire of Beecher and his principal should be gratified. This information was contained in the original petition of the commissioners to the court of common council, recommending the acquisition of the land for park purposes, as also the sale to Beecher, and praying for its condemnation. Beyond the information thus conveyed this petition is silent. It is silent as to all those matters which are relied upon to create an equity in Beecher, and the cross-complaint will be searched in vain not only for allegations of knowledge on the part of the court of common council concerning these matters, but for statements of any other additional information conveyed to it upon the subject. It adopted the recommendation for condemnation, and proceeded in due form to thus acquire the land. It is plain from the allegations that it did so with the definite purpose of thereafter conveying to Beecher the two-acre portion for the sum of $700, in accordance with what was reported to it as his desire, and in accordance with what was in fact his agreement with the board of park commissioners. This it could do without becoming either legally or equitably obligated to make the intended conveyance. Upon the information which it possessed its present purpose was one which it was free to change.

The first difficulty with these moving defendants' position is that the conduct and agreements of the board of park commissioners was not the conduct or agreements of the court of common council. The second difficulty exists in this, that the pertinent conduct and agreements of the former board were, so far as appears, wholly unknown to the latter body and therefore cannot, by adoption or ratification, be made in legal contemplation the conduct or agreements of that body. *Norwalk Gaslight Co.* v. *Norwalk*, 63 Conn. 495; *Turney* v. *Bridgeport*, 55 id. 412.

There is another aspect to the claim for relief prayed for

in the cross-complaint, which is not to be overlooked. The agreement between Beecher and the board of park commissioners, which is the foundation of the claim, is one which inevitably involved in its execution an unlawful exercise of the power of eminent domain. It embodied a thinly disguised attempt to take by process of law property for a private use. True, the parties in immediate interest were agreeable to such action, but the result and object thereof was the defeat of the will of a donor by an unauthorized use of the machinery of the law. Courts of equity would be very slow indeed, under any circumstances, to compel the performance of such an agreement by any party to it. *Funk* v. *Gallivan*, 49 Conn. 124; *Hurd* v. *Hotchkiss*, 72 id. 472.

Turning now to the complaint, we observe that it deals with a situation in which the defendant city appears as having already acquired, by condemnation for public park uses and payment therefor, the whole nine-acre tract in question, and as threatening to dispose of the two-acre portion of it. It looks entirely to the future. The acts of the past are treated as secure. All that it seeks is the prevention of a sale and conveyance by the city of that which it owns.

The plaintiff contends that the city owns nothing which can be the subject of a sale to a private individual. The rights of the city having been acquired solely by condemnation for a public park, it is said that it has only an easement in the land to use it for park purposes, and therefore nothing which can pass by conveyance. This suggestion is one which might be thought to more directly concern the proposed purchaser for consideration than the plaintiff taxpayer, but we have no hesitation in saying that it is not well made.

It is well settled that the State has the power to determine the estate or quantity of interest which shall be taken by condemnation proceedings, and may authorize the taking of a fee as well an easement only. *Heyward* v. *Mayor*, 7 N. Y. 314; *Brooklyn Park Commissioners* v. *Armstrong*, 45 id. 234; *Dingley* v. *Boston*, 100 Mass. 544; *Water Works Co.* v. *Burkhart*, 41 Ind. 364; *Raleigh & Gaston R. Co.* v. *Davis*, 2 Dev. & B. Law (N. C.), 364. It is not necessary that the authority to

take a fee be given in express terms, or that exact or technical language should be used in the enabling Act, in order that the fee or the whole title of the owner pass by the condemnation proceedings. In the absence of express and precise provisions, the intention of the Act and the construction to be put upon its terms may be gathered from its general scope and tenor and the nature of the public use for which the condemnation is authorized. If the legislative intention to vest the fee is thus made clear, and this intention is consistent with the language employed, effect will be given to the intention. This is especially true where a remaining private ownership is inconsistent with the use for which the land is taken, and where the purposes of the condemnation will not be satisfied by the taking of a lesser estate or easement. *Washington Cemetery* v. *Prospect Park & C. I. R. Co.*, 68 N. Y. 591; *Dingley* v. *Boston*, 100 Mass. 544; *Holt* v. *City Council of Somerville*, 127 id. 408.

The uses for which a public park is acquired are continuous and peculiarly exclusive. They are inconsistent, and must ever be inconsistent, with the existence and exercise of any of the incidents of private ownership therein. They are inconsistent with the enjoyment of private rights, whether upon the surface of the ground thereof, or to the highest heavens above, or the lowest earth beneath. The idea of a public park implies more than a use by the public which is susceptible of co-existence with a private right capable of concurrent exercise. The existence of a park implies the probability of improvements and transformations, oftentimes extensive and costly, and which in the nature of things must be undisturbed. It implies something more than the right of public passage, however frequent and exclusive. The right of access in the capacity of owner is an essential incident of beneficial ownership. Without it there can be no enjoyment. This right of access incident to ownership cannot be preserved to the original landowner where it is swallowed up in the oftentimes large tracts of public parks, or whenever land contiguous to the particular piece is not retained by him. *Brooklyn Park Commissioners* v. *Armstrong*, 45 N. Y. 234; *Washington Ceme-*

*tery* v. *Prospect Park & C. I. R. Co.*, 68 id. 591; *Holt* v. *City Council of Somerville*, 127 Mass. 408.

The legislature, in the charter of the defendant city, has authorized it "to take" by the right of eminent domain "any property or property rights" which might be needed for park purposes. This taking, thus authorized, in this connection must, by reason of the considerations stated, be construed to mean such a taking as will be consonant with the purpose in view, and therefore a taking which divests the other parties to the proceedings of all their title or interest in the property taken and vests the same in the city. The city, therefore, upon the allegations of the complaint, acquired and has the fee of the lands condemned in its proceedings against the Retreat for the Insane.

The city having acquired a fee, the next question is as to its power to alienate. The defendant contends that it has no such power, since it holds the land in perpetual trust for the public. That it holds the land impressed with a trust is doubtless true. Whether this trust is of necessity a perpetual one and one which it cannot terminate by alienating the land, is a question which need not be discussed. See *Stevens* v. *Norfolk*, 42 Conn. 377. The General Assembly has intervened in the matter, and we think effectually.

The legislature possesses the power to give the city authority to terminate this trust as to the whole or any portion of the land condemned, by means of a conveyance. Its power to confer such authority may not be unlimited. Circumstances might exist in which such legislation would be only one step in an attempt to accomplish unconstitutional ends by indirection. The courts, in such cases of bad faith, might intervene. 2 Dillon on Municipal Corporations, § 590; *Water Works Co.* v. *Burkhart*, 41 Ind. 364. We have no occasion to deal with that situation here. We have only to consider general principles and their application. These justify the exercise of power assumed in the legislation of 1901, hereinafter referred to, without which power condemnation of fees would amount to perpetual sequestrations, with no possible means of escape, whatever the necessity. *Brooklyn*

*Park Commissioners* v. *Armstrong*, 45 N. Y. 234; *In re City of Rochester*, 137 id. 243; *Water Works Co.* v. *Burkhart*, 41 Ind. 364.

The Act of 1901 above referred to (Special Acts of 1901, p. 1206), authorizes the city, upon vote of the court of common council, to sell to Beecher "a tract of about two acres of land on the southwest corner of the land formerly owned by the Hartford Retreat for the Insane, and condemned by said city as an addition to West Rock Park, said two acres being bounded southerly and westerly by land of the Diamond Match Company, and easterly and westerly by the remainder of the tract so condemned."

It is urged that this Act is fatally defective, in that, to quote the plaintiff's brief, "the piece to be conveyed is left uncertain." If the Act contained a grant of land this objection might be well taken. It, however, does not purport to be a grant. Unlike a grant or deed it is not a link in a chain of title, which public policy requires shall furnish information to all the world of the precise tract granted or conveyed. The Act is only a grant of authority. A conveyance made under it must pursue it, and the authority must be definite enough to have it appear that such is the fact. It need not be more so, however. The conveyance must be within the authority; the authority need not be as narrow as the conveyance. The conveyance must be certain as to the lands conveyed; the authority need not be, if it certainly embraces or reaches to the land conveyed. To illustrate: An Act authorizing the defendant city to sell and convey any portion of its lands held for park purposes, or any portion of the lands of West Rock Park, would, in form at least, be a good authority for the sale of any acre thereof. That acre, when sold, would of course have to be definitely described. The authority, however, is not uncertain. So, also, legislative authority for the sale of two acres more or less out of West Rock Park, or out of the nine-acre addition in question, would be ample authority for the sale of that quantity of land anywhere within those areas. In the present case the legislature stipulated that the two acres should be located in the southwest corner.

Driscoll *v.* New Haven.

If the city in fact sells only the permitted quantity of land, and that land is located as stated, the authority of the Act is pursued. The deed will make the land certain as to its description, and the authority will run to whatever land is selected for the conveyance, if only the limitations imposed by the Act are preserved.

The objection to the legislative Act, to wit, that it was void as an attempt to give an exclusive right or privilege to an individual, needs no argument. Clearly there was no invasion, as claimed, of the first section of the declaration of rights in our Constitution, in giving to the defendant city the power to sell and convey the land in question to an individual named, if it choose to do so, and if it succeeded or already had succeeded in making proper and satisfactory terms with him. That was the legal purport of the Act. It was a grant of power to the city, not " an exclusive public emolument or privilege " conferred upon Beecher.

From these considerations it follows of course that the plaintiff has no standing in court to have the defendant city enjoined as prayed for. The subject-matter of the complaint is one for municipal consideration and decision, without judicial intervention. *Whitney* v. *New Haven*, 58 Conn. 450.

The Superior Court is advised that both the demurrer to the complaint and the demurrer to the cross-complaint should be sustained, and both the complaint and cross-complaint dismissed.

In this opinion the other judges concurred.