EDWIN L. BENTLEY, APPELLANT, v. THE CITY OF NEW-ARK, RESPONDENT.

Submitted May 29, 1931—Decided February 1, 1932.

For the appellant, *Stetson & Mapletoft* (*Henry T. Stetson, William Hamilton Osborne* and *Charles F. Mapletoft,* of counsel).

For the respondent, *Frank A. Boettner* and *Frederick H. Groel.*

The opinion of the court was delivered by

CASE, J. This is an action in ejectment heard by consent, and on an agreed state of facts, by Judge Smith, without a

jury, in the Essex County Circuit Court. Judgment was for the city and plaintiff appeals. The suit is to recover possession of a lot of land, thirty feet front and fifty-three feet deep, on the southerly side of South Canal street (Raymond Boulevard), in the city of Newark, originally the property of Peter Lindsley, plaintiff's grandfather. The land was condemned for the purposes of a city market and, with neighboring lands, was for many years so used. Recently the market use was abandoned and the land was, by ordinance, opened up as part of a city street. The case in many of its aspects resembles *Carroll et al.* v. *City of Newark, post, p.* 323. The lands in the two cases abut on their rear lines and together form the newly opened "Commerce Court" extending from Commerce street to South Canal street. The cases differ in that the respective condemnation proceedings were at different times and under different statutes.

The condemnation in the instant case was under the authority of an act entitled "A further supplement to an act entitled 'An act to incorporate the city of Newark,'" approved March 13th, 1851. *P. L.* 1851, *p.* 232. Section 15 of the act enacts:

"That it may be lawful for the common council to take, for the purpose of enlarging the present public market place, called the Centre Market and for the purpose of sewers and drains, such lands or other real estate and appurtenances as the common council determine to be requisite, compensation being first ascertained and paid therefor, in the same manner as is now provided when lands are taken for public streets."

The city, unable to acquire by purchase, condemned the property in 1853 "for the purpose of enlarging the then Public Market Place called Centre Market." The appropriate resolution stated that the condemnation commissioners in making an estimate and assessment of the compensation and damages, had authority to proceed in the same manner as was then provided when lands were to be taken for public streets. The words of the statute "in the same manner as is now provided when lands are taken for public streets" so clearly refer to the method of the taking, that is, the procedure in condemnation, and not to the estate taken, that, with-

out more, we state this to be our construction. The commissioners made an award to the owner, Peter Lindsley, of $1,600, and this sum, with an addition for interest, was paid by the city to Lindsley in full satisfaction of the damages awarded him. The city forthwith took possession of and occupied the lands.

There is no suggestion that the city was not fully and of right in the exclusive possession and occupancy of the entire lands from the date of the condemnation until the occurrence of the events presently to be mentioned, and on the presentation made we assume the fact of such right, possession and occupancy. It is presumed that the tribunal upon which devolved the function of fixing compensation to the owner whose property was taken appraised an estate fully commensurable in quantity and duration with the proposed use which formed the occasion and the justification for the condemnation. It was the duty of the condemnation commissioners in making the award for Lindsley's "lands or other real estate and appurtenances," which the statute authorized to be taken to have regard for the fact that the needs and functions of a city market were such that the possession and occupancy by the city not only would be complete and exclusive but might last forever, and to fix their award for compensation accordingly. There is nothing in the case to indicate that the award was not made, paid and received on that basis. Nor does it appear that either Peter Lindsley or his heirs owned or had any interest in other lands appurtenant to these or to which these lands were appurtenant. Lindsley died in 1856. He was the father of five children, all of whom have since died. The record contains no hint that Lindsley or his heirs ever exercised, or attempted to exercise or even asserted the right to exercise, any of the rights or privileges of ownership after the condemnation or that he or any of his heirs ever made the slightest claim to the property or any interest therein until the present plaintiff in 1928, alleging the ownership, by inheritance, of a fractional one-fifteenth of the fee, brought this suit upon the theory that a reversion had resulted from the abandonment of the market use.

In or about the month of February, 1925, the city acquired other and disconnected premises and opened a new market thereat, demolished the buildings and structures at the former market and ceased using the old lands for market purposes. In anticipation of this development the city, on or about March 25th, 1924, adopted the street ordinance already mentioned. This was quite clearly an abandonment of the market use. The city seeks to escape the finding of an abandonment of the original use by recourse to the wording of the statute whereby the city was authorized to take lands "for the purpose of enlarging the present public market place * * * and for the purpose of sewers and drains," and by the statement *in the brief* that the land has been constantly, and is still, used for sewers and drains. The argument fails for several reasons, of which one will suffice, namely, there is no proof to sustain the allegation of such a use either heretofore or now.

Appellant advances the following as a statement of law upon which he rests:

"The appropriation of land under the power of eminent domain does not give a fee-simple estate in the absence of express statutory language to that effect, but only a right to use and occupy the land for the purpose for which it is taken * * * and when this use ceases the title reverts to the original owners," and for this he relies upon *Lazarus* v. *Morris* (*Pa.*), 61 *Atl. Rep.* 815, from which opinion the quotation is excerpted. But that opinion contains this reservation: "Nor is it necessary to discuss whether the land so appropriated might be used for other kindred public purposes. The question does not arise under the facts of this case." It does not appear that the decision dealt with the question of use for other public purposes whether kindred or not. Therefore, it is not a precedent for the issue before us.

Appellant, further, discussing the attributes of an easement, concedes that such a right is scarcely comprehensive of the city's estate in the case at bar but suggests that "where the entire land and right to possession is taken for a public purpose, it would be more proper to say that *possession* and

the *right of possession* of the land is taken, *for the purposes for which taken"* (italics his). We understand appellant's contention to be that the city took the entire possession and had the right of entire possession but that such right was limited in time to the period during which the city should devote the possession to the purposes of a city market, and that when the market was abandoned, the right of possession, theretofore completely and exclusively in the city, reverted to the Lindsley heirs. We agree in so much of this thought as recognizes a clear distinction between an easement, or a right in the nature of an easement, such as ordinarily exists with respect to a highway, and that character of holding which subsists in governmental bodies when complete and exclusive possession is reasonably necessary to the public use for which the lands are taken; but even assuming that an estate of the last named type is subject to reversion on the cessation of the public use, we are nevertheless unable to distinguish between the nature of an estate so qualified and the characteristics of that form of title that has been called a determinable fee—one "which may continue forever, though at the same time there is a contingency which, when it happens, will determine the estate." *Pipe Line Co.* v. *Delaware, Lackawanna and Western Railroad Co.,* 62 *N. J. L.* 254, 268; *Carroll et al.* v. *City of Newark, supra.*

It cannot well be, and is not, contended that the use of the lands for highway purposes is a greater burden upon the property or a more effective barrier against Peter Lindsley or his heirs than was the use for market purposes. In fact the highway use is the lesser, inasmuch as when land is taken for highway purposes, it is only an easement that is taken. The property when taken by condemnation for market purposes was fully valued for that purpose. The greater includes the less. The owner was justly compensated. Therefore, the constitutional prohibition (Constitution, article 1, section 16) that "private property shall not be taken for public use without just compensation" has not been violated. The property is not being placed to an unlawful use, or to a

private use, or to a use for which the city might not have originally condemned.

The statute under review is neither so detailed nor so definite as that in the Carroll case; but it does authorize the taking of "lands or other real estate and appurtenances," and that, too, as we have found, for a use that might continue forever, and that, while it should last, would embrace exclusive possession in the city and at a full compensation to the owner. That was the legislative sanction and the city took accordingly. Authority to a city to "purchase or otherwise take" lands has been held to import a title in fee-simple. *Dingley* v. *City of Boston,* 100 *Mass.* 544. Construction of legislative intent as giving a fee is particularly apt where a remaining private ownership is inconsistent with the use for which the land is taken and where the purposes of the condemnation will not be satisfied by the taking of a lesser estate or easement. *Driscoll* v. *City of New Haven* (*Conn.*), 52 *Atl. Rep.* 618.

We conclude that where a municipality, under legislative sanction, in the exercise of eminent domain takes lands by condemnation for a public use that involves exclusive possession and exclusive right of possession and that may last forever, it takes a fee, and the payment of the award, arrived at in the statutory manner, carries with it the presumption of full payment for the estate in fee. The city therefore took a fee; whether a determinable fee or otherwise need not be decided since the city is still devoting the lands to a public use. A title in fee under such circumstances is not determined by the fact that the municipality abandons the specific use for which the lands were taken and dedicates the lands to another public use. There has been no reversion.

Judgment below will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, HETFIELD, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—PARKER, KAYS, JJ. 2.