TOWN OF WINCHESTER ET ALS. *v.* WILLIAM J. COX,
HIGHWAY COMMISSIONER.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued March 4—decided May 22, 1942.

*Wallace W. Brown* and *Reese H. Harris, Jr.,* for the appellants (plaintiffs).

*Leo V. Gaffney,* assistant attorney general, with whom, on the brief, was *Francis A. Pallotti,* attorney general, for the appellee (defendant).

MALTBIE, C. J. Under our statutes as they existed in 1939, the highway commissioner was given power to take any land he might find necessary for the layout, alteration, widening or improvement of any trunk line highway, the owner of such land to be paid for all damages by the state; the commissioner was authorized to file with the clerk of the Superior Court an assessment of damages and benefits and might thereafter proceed with the improvement; any person aggrieved by the assessment might apply to the court or, if the court was not in session, to any judge thereof, for a reassessment of the damages and benefits so far as he was affected by them; and the matter was then to be referred to a state referee for hearing and report. General Statutes, §§ 1528-1531. Proceeding under these statutes, the highway commissioner took parts of two tracts of land for the purpose of improving a trunk line highway within the plaintiff town, and filed an assessment in the Superior Court in which the town and Dudley L. Vaill were named as parties and damages of one dollar were awarded to the town. The town, Vaill and the executor and residuary legatees of the estate of Mary D. V. Talcott, one of the grantors in one of the deeds hereafter referred to, applied to the court for a reappraisal of the damages awarded.

The matter was referred to a state referee. He found that the land taken had been conveyed to the town by Vaill and Mrs. Talcott by three deeds, two of which recited that the consideration was the agreement of the town forever to maintain the land as a park, and the third recited that the land conveyed was to be forever used as a public park. None of the deeds

expressly provided for a reverter to the grantor or grantors in case the land was no longer used by the town for that purpose. After the conveyance the town did use the land for a park until it was taken by the highway commissioner. The referee found that "the only evidence produced as to the value of the land taken to the Town of Winchester as a public park was that it had no value as a park," and that "the appellants" suffered no damage by reason of the taking, but that if the land were unrestricted as to its use the value of the tracts after the highway commissioner took a portion of them was reduced by $4800. A remonstrance filed by the plaintiffs having been overruled, judgment was rendered that the town recover the sum of $1. From that judgment the plaintiffs have appealed. The plaintiffs other than the town are not claiming before us that the lands reverted to them or that any damages should be awarded to them, but unite in the claim of the town that it should be paid as damages the value of the land taken.

The functions of a municipal corporation fall into two classes, those of a governmental nature, where it acts merely as the agent or representative of the state in carrying out its public purposes, and those of a proprietary nature, where it carries on activities for the particular benefit of its inhabitants. *Hannon* v. *Waterbury*, 106 Conn. 13, 16, 136 Atl. 876; 1 McQuillin, Municipal Corporations (2d Ed.), §§ 108, 190. Towns are authorized to exercise functions of both kinds. General Statutes, §§ 390, 391. Where land is held by a municipality in its proprietary capacity, it cannot be taken for public use without compensation to the municipality. *Southington* v. *Southington Water Co.*, 80 Conn. 646, 656, 69 Atl. 1023; *Higginson* v. *Treasurer, &c. of Boston*, 212 Mass. 583, 585, 99 N. E. 523; *Mount Hope Cemetery* v. *Boston*, 158 Mass.

509, 511, 33 N. E. 695; *Clinton* v. *Cedar Rapids & Missouri River R. R. Co.,* 24 Iowa 455, 476; *State Highway Commission* v. *Elizabeth,* 102 N. J. Eq. 221, 226, 140 Atl. 335, affirmed 103 N. J. Eq. 376, 143 Atl. 916; *State ex rel. Board* v. *Stanolind Pipe Line Co.,* 216 Iowa 436, 441, 249 N. W. 366. As regards property held by a municipality in its governmental capacity, the legislature may in general exercise final authority over its use or disposition, and, if it decides to take land so held or authorize its taking by others for a public purpose, the municipality is ordinarily not entitled to compensation. *Mount Hope Cemetery* v. *Boston,* supra; *People* v. *Kerr,* 27 N. Y. 188; *Electric R. R. Co., Appellants,* 96 Me. 110, 116, 51 Atl. 818; *Chester County Institution District* v. *Commonwealth,* 341 Pa. 49, 57, 17 Atl. (2d) 212: *Zanesville* v. *Telegraph & Telephone Co.,* 64 Ohio St. 67, 81, 59 N. E. 781; *Portland & Willamette Valley R. R. Co.* v. *Portland,* 14 Ore. 188, 195, 12 Pac. 265; *In re Certain Land in Lawrence,* 119 Fed. 453; 18 Am. Jur. 805, § 170; note, 56 A. L. R. 367. Where a municipality in this state holds and administers property for use as a public park, it is acting in its governmental and not its proprietary capacity. *Hartford* v. *Maslen,* 76 Conn. 599, 611, 57 Atl. 740; *Conners* v. *New Haven,* 101 Conn. 191, 194, 125 Atl. 375; *Epstein* v. *New Haven,* 104 Conn. 283, 284, 132 Atl. 467; *Hannon* v. *Waterbury,* supra, 17. Hence it follows that it is ordinarily within the power of the legislature to authorize the state to take land so held without compensation to the municipality.

Where land is given to a municipality in trust for the purpose of using it as a public park it is probably true, as the plaintiffs contend, that that land could not be taken under the power of eminent domain without compensation being made therefor, any more than it

could if the land had been given to individuals as trustees to hold and administer it for that purpose. They further claim that the conveyances to the town in this case were to it as trustee for a charitable use and that therefore this principle would apply. Where land is given to a municipality for such a use as that of maintaining a park, where it is dedicated for such a use, and even where the municipality itself acquires it and uses it for that purpose, the municipality is often referred to in the decisions as holding the land in trust or as a trustee for the public, and in our own decisions we have used this language. See, e. g., *Derby* v. *Alling,* 40 Conn. 410, 438; *Driscoll* v. *New Haven,* 75 Conn. 92, 101, 52 Atl. 618; *Hartford* v. *Maslen,* supra. It is of course not necessary for the creation of a trust that any particular language be used if the intent of the creator is to establish it; but we have repeatedly held that where property is conveyed to a charitable corporation, simply with the requirement that it be used for one of its authorized purposes, this is not in itself sufficient to establish a trust. *Pierce* v. *Phelps,* 75 Conn. 83, 86, 52 Atl. 612; *Dwyer* v. *Leonard,* 100 Conn. 513, 519, 124 Atl. 28; *Lyme High School Assn.* v. *Alling,* 113 Conn. 200, 204, 154 Atl. 439; *Connecticut Junior Republic Assn., Inc.* v. *Litchfield,* 119 Conn. 106, 114, 174 Atl. 304; see note, 130 A. L. R. 1133. It is true that in *Bristol Baptist Church* v. *Connecticut Baptist Convention,* 98 Conn. 677, 120 Atl. 497, we held that a trust was created where land was conveyed to a Baptist society for the purpose of a site for a meeting house and parsonage for the use of the society and the church connected with it, with a provision limiting the doctrines to be preached and taught in the church; but in that case the society and church were separate entities, the church carrying on religious work in the building the legal title to which was in

the society. To characterize the capacity in which a municipality holds land conveyed to it for carrying out one of its proper purposes as that of a trustee, while useful in many instances in working out the rights of the parties, is not, in the absence of statute, altogether accurate, and its capacity is rather that of a quasi trustee. 1 Bogert, Trusts and Trustees, p. 171; and see *Codman* v. *Crocker,* 203 Mass. 146, 150, 89 N. E. 177. We cannot construe the deeds involved in this action as sufficient to make the town strictly a trustee of the lands in question so as to hold that it is entitled, as such, to damage for their taking.

When, however, the town accepted the lands under the agreements and for the purpose of perpetually maintaining them as a park, a valid charitable use came into existence; *Hamden* v. *Rice,* 24 Conn. 350, 355; Restatement, 2 Trusts, § 373; and the perpetual maintenance of this use is required by the Statute of Charitable Uses. General Statutes, § 5000; *Eccles* v. *Rhode Island Hospital Trust Co.,* 90 Conn. 592, 598, 98 Atl. 129. Apart from the statute, the town, by accepting the conveyances, became bound to observe the provisions in them as to the use to which the land was to be put; *Lyme High School Assn.* v. *Allen,* supra, 205; and it has been held that the legislature could not lawfully authorize a municipality to make a different use of property given to it under similar restrictions. *Cary Library* v. *Bliss,* 151 Mass. 364, 375, 25 N. E. 92; *St. Paul* v. *Chicago, M. & St. P. Ry. Co.,* 63 Minn. 330, 352, 63 N. W. 267, 65 N. W. 649, 68 N. W. 458; *Jacksonville* v. *Jacksonville Railway Co.,* 67 Ill. 540, 543; *Railroad Co.* v. *Cincinnati,* 76 Ohio St. 481, 501, 81 N. E. 983; *Warren* v. *Mayor of Lyons City,* 22 Iowa 351, 355. That aside, when the town accepted the lands it did so as the representative of the state in the exercise of one of its functions, and

the obligations assumed by it became obligations of the state. The state itself cannot receive a gift of property charged with a certain use and legally depart from that use. *State* v. *Blake,* 69 Conn. 64, 73, 36 Atl. 1019; *Bassett* v. *City Bank & Trust Co.,* 115 Conn. 393, 404, 161 Atl. 852. Such an obligation is, to be sure, ordinarily not enforceable against it, because without its consent it may not be sued; but when it comes into court to seek relief it subjects itself to the jurisdiction of the court, the court may determine where the equities lie and the state is bound by its decree. *Reilly* v. *State,* 119 Conn. 217, 219, 175 Atl. 582. In bringing the matter of the award of damages for the taking of the lands in question into court, the highway commissioner was the representative of the state and his acts are in effect its acts. *Munson* v. *MacDonald, Highway Commissioner,* 113 Conn. 651, 660, 155 Atl. 910; *State* v. *Giant's Neck Land & Improvement Co.,* 116 Conn. 119, 123, 163 Atl. 651; *State Highway Commissioner* v. *Elizabeth,* supra, 227.

This is not to say that where a municipality accepts conveyances of lands upon an agreement or condition that they be used only for a certain purpose the state may not take them, upon making just compensation, for a different purpose. All property is, and must be, held subject to the right of the state to take and use it for public purposes; this includes property already devoted to a public use; and it is for the legislature primarily to determine when property so devoted to one public use may be taken for another. *New York, Housatonic & Northern R. Co.* v. *Boston, Hartford & Erie R. Co.,* 36 Conn. 196, 198; *Evergreen Cemetery Assn.* v. *New Haven,* 43 Conn. 234, 242; *Starr Burying Ground Assn.* v. *North Lane Cemetery Assn.,* 77 Conn. 83, 88, 58 Atl. 467; *Water Commissioners* v. *Johnson,* 86 Conn. 151, 164, 84 Atl. 727; *New Haven Water Co.*

v. *Russell*, 86 Conn. 361, 368, 85 Atl. 636; *Inhabitants of Springfield* v. *Connecticut River R. Co.*, 4 Cush. (58 Mass.) 63, 71. It is not questioned in this case that the highway commissioner was authorized to take the lands. When he filed in court the award of damages which laid the basis for the application to the court for a reappraisal, it became the duty of the court to award such damages as were justly due, and that award would be binding upon the state.

The constitution provides that no property shall be taken for a public use without just compensation. Const. of Conn., Article 1, § 11. We have said that just compensation means a fair equivalent in money for the property taken as nearly as its nature will permit; *Waterbury* v. *Platt Bros. & Co.*, 76 Conn. 435, 440, 56 Atl. 856; *New Haven Water Co.* v. *Russell*, supra, 368; and that market value is ordinarily the measure of compensation, although this is not necessarily so. *State* v. *Suffield & Thompsonville Bridge Co.*, 82 Conn. 460, 467, 74 Atl. 775. It may be questioned whether the taking of land held by a municipality for a restricted use falls fully within the constitutional provision. In *United States* v. *Nahant*, 153 Fed. 520, 82 C. C. A. 470, where the taking by the federal government involved a part of a system of public municipal works, the court pointed out (p. 521) that the question was to be decided upon equitable principles: "The paramount law intends that the owner shall be put in as good condition pecuniarily by a just compensation as he would have been if the property had not been taken. . . . The question of just compensation contemplated by the Constitution is more an equitable question than a strictly legal or technical one"; and it also said (p. 524): "The primary question, of course, is just compensation, and this means full equivalent for the property taken." In

*United States* v. *Wheeler Township*, 66 Fed. (2d) 977, 984, where under the authority of the United States land over which the defendant township maintained a highway was flooded, the court held that it was to be compensated for the cost of a reasonably passable road at the higher level made necessary by the flooding, stating that just compensation "means that the condemnee must be made whole for what is taken from him." In *Fitzsimons & Galvin, Inc.* v. *Rogers*, 243 Mich. 649, 220 N. W. 881, the state highway department took land along a railroad right of way in order to improve a highway and the court said (p. 664): 'Adequate compensation is such only as puts the injured party in as good condition as he would have been in if the injury had not been inflicted. It includes the value of the land, or the amount to which the value of the property from which it is taken is depreciated." In such a situation as the one before us, the more apt definition of just compensation is that stated in *In re Widening of Bagley Avenue*, 248 Mich. 1, 5, 226 N. W. 688: "Nothing can be fairly termed just compensation which does not put the party injured in as good a condition as he would have been if the injury had not occurred." See *United States* v. *Rogers*, 257 Fed. 397, 400, 168 C. C. A. 437. The obligation which rested upon the state in this case was to make the town good so far as money could for the loss of the lands taken from the park. This would require that it pay the value of the land taken. The money received would be held by the town subject to a restriction similar to that placed upon the lands; that is, that it must be used only for proper park purposes.

It is true that the referee has found that the only evidence as to the value of the land to the town as a public park was that it had no value as a park. The only reasonable meaning to attach to this finding is

that in the judgment of the referee the park was of no benefit to the town or its inhabitants. In the first place, the lands were not held by the town as a park for its own benefit or that of its inhabitants, but for the benefit of the people of the state at large. *Hartford* v. *Maslen,* supra. In the second place, the outstanding fact is that there has been taken from the town property which the referee has found had a value of $4800 if the restriction to park uses be disregarded. The very taking of the land destroyed the restriction. Suppose it had been within the power of the legislature to direct that these lands be taken for the purpose of selling them to others, and it had done so, could there be any question that the town would equitably be entitled to receive their fair value, although there was no evidence that their use for a park was of benefit to the people of the state? Or suppose land given to trustees to hold for the purpose of use only as a public park was taken, would not a like conclusion follow? Certainly equity cannot be done to the town and to those for whose benefit it holds the lands unless it receives the equivalent of their value apart from the restriction, whether or not their use as a park was in fact beneficial. In *New Haven County* v. *Trinity Church Parish,* 82 Conn. 378, 73 Atl. 789, land belonging to a church was taken, the church was awarded its fair market value, this was not questioned on the appeal and judgment awarding it damages to the amount of that value was directed. The finding of the committee fails to establish a sound ground for the award to the town of merely nominal damages.

The judgment in this case provides that the plaintiff town recover of the defendant highway commissioner the sum of one dollar without costs. Under the statute the proceedings are for a reappraisal of the damages as found by the commissioner in the assessment

filed in the office of the clerk of the court and the statute provides the method by which payment of the amount found due by the court shall be made to the landowner. General Statutes, § 1531; and see General Statutes, Sup. 1941, § 199f. The judgment should merely state that the amount due the plaintiff as damages for the taking of the land is $ . *Andrews* v. *Cox,* 127 Conn. 455, 464, 17 Atl. (2d) 507. The statutes also provide that if, upon application for reassessment, the court shall find a greater amount due than was awarded by the commissioner costs shall be given. General Statutes, Cum. Sup. 1939, § 426e.

There is error, the judgment is set aside and the case is remanded with direction to enter judgment that the amount due the plaintiff town for the taking of the lands is $4800, with costs.

In this opinion AVERY and BROWN, Js., concurred; JENNINGS and ELLS, Js., dissented.

JENNINGS, J. (dissenting). The majority opinion holds that the town held the land in question in its governmental capacity and that it was not a trustee. This is logically followed by the statement that "the lands were not held by the town as a park for its own benefit or that of its inhabitants, but for the benefit of the people of the state at large." If the land was held for the benefit of the people of the state at large, I am unable to see why the state should pay damages to the town when the land, found by the referee to have no value when it was taken as a park, was devoted to a different public use. The fact that the land may have been subject to a charitable use does not affect the question when it is admitted that such land may be taken for a public use and when the beneficiary of that use is the same before and after the taking.