INHABITANTS OF NORTH YARMOUTH *versus* GREELEY SKILLINGS.

In respect to public corporations, which exist for public purposes alone, like counties, cities and towns, the Legislature, under proper limitations, have the right to restrain, modify, enlarge or change them, providing, however, that property owned by such corporations shall be secured for the use of those having an interest in it.

If a town is divided, and a part of its territory, with the inhabitants thereon, is incorporated into a new town, the old town will retain all the property, and be responsible for the existing liabilities, unless there is some legislative provision to the contrary.

But, upon such division, the Legislature have constitutional authority to provide that the property, owned by the original town, shall be appropriated or held for the use and enjoyment of the inhabitants of both towns, and to impose upon each town the payment of a share of the corporate debts.

If, upon such division, the original town holds any property, such as flats, sedge banks, or fisheries *in trust*, for the use of all the inhabitants, the Legislature may provide that the original town shall still hold such property *in trust* for the inhabitants of both towns.

In regard to property so held *in trust*, whether the Legislature, by dividing the town, without making any such provision, could deprive a part of the inhabitants of their accustomed use of it, — *quære*.

TRESPASS, *quare clausum*.

In 1743, the proprietors of the lands in the town of North Yarmouth, conveyed to certain persons, then selectmen of said town, " all the flats, sedge banks and muscle beds in said town, lying below high water mark."

This conveyance was made " in behalf of, and for the sole use, benefit and behoof of the present inhabitants of said town of North Yarmouth, *and of all such as may or shall forever hereafter inhabit and dwell in the said town*, to be by said inhabitants, forever hereafter used, occupied and improved in common, with full liberty to graze, feed, cut rock weed, dig all sorts of shell fish," &c.

The rights conveyed by said deed, continued to be enjoyed by the inhabitants of North Yarmouth until 1849, when the Legislature divided said town, erecting a part of the territory into the town of Yarmouth.  By the legislative Act of division and incorporation, it was provided that the inhabitants

of  both  towns  should  continue  to  hold  and  enjoy  in  common,
all  their  rights  and  privileges  in  said  flats,  &c.

Subsequently,  the  town  of  North  Yarmouth  claimed  to  hold
said  flats,  sedge  banks,  &c.,  for  the  exclusive  use  of  the
inhabitants  of  that  town,  denying  the  right  of  the  inhabitants
of  the  new  town  of  Yarmouth  to  any  enjoyment  thereof.
The  defendant  was  originally  an  inhabitant  of  North  Yar-
mouth,  and,  after  the  division,  an  inhabitant  of  Yarmouth.
Claiming  the  right  thereby  to  enter  upon  said  flats,  he  went
thereupon  and  cut  a  quantity  of  grass,  for  which  the  plaintiffs
brought  this  action  of  trespass  *quare clausum.*  At  the  hearing,
before  DAVIS,  J.,  the  facts  were  REPORTED  by  the  agreement
of  the  parties,  and  the  case  submitted  to  the  full  Court.

*Howard  &  Strout*  argued  for  the  plaintiffs.

By  the  facts  agreed,  the  plaintiffs  were  sole  owners  of  the
premises  upon  which  the  alleged  trespass  was  committed,  (by
conveyance  from  the  proprietors  of  North  Yarmouth  in  1743,
May  25th,)  up  to  the  time  of  the  incorporation  of  Yarmouth,
Aug.  8,  1849.    Special  Laws,  1849,  c.  264.

The  *title*  to  the  land  owned  by  plaintiffs,  was  not  affected
by  the  Act  of  incorporation  referred  to.    Although  it  was  com-
petent  for  the  Legislature  to  establish  a  new  corporation  from
a  part  of  North  Yarmouth,  and  define  its  limits  territorially,
yet  the  Legislature  could  not  disturb  the  *title*  to  the  land
within  the  limits  of  either  corporation.    They  could  properly
change  the  municipal  jurisdiction  of  the  territory,  but  not  its
*title.*    In  respect  to  their  *titles*  to  lands,  towns  are  as  inde-
pendent  of  the  legislative  control  as  are  individuals.    The
Legislature  could  no  more  transfer  the  real  estate  of  one  town
to  another,  than  they  could  convey  the  property  of  one  man
to  another,  by  legislative  enactment.

When  the  inhabitants  of  Yarmouth  were  incorporated  into
a  separate  town,  they  ceased  to  have  any  municipal  rights  or
privileges  in  the  town  of  North  Yarmouth,  and  in  its  lands
and  public  landings,  &c.    As  individuals,  merely,  they  had  no
right,  title  or  interest  in  such  lands  and  privileges.    But  it

was only in their corporate relation, that they possessed any such right and interest, and when their municipal relation changed, their prior municipal rights and relations ceased.

This was not a mere division of a town, but it was a creation of a "separate town," investing it with all the privileges and powers, and subjecting it to all the duties and liabilities incident to the inhabitants of other towns in this State. The town of North Yarmouth, remained with all of its corporate rights and privileges, and, with its corporate obligations and duties unchanged, were liable for all the debts and obligations of the town before the incorporation of Yarmouth. *Windham* v. *Portland*, 4 Mass. 389; *Richards* v. *Doggett*, 4 Mass. 539; *Hampshire* v. *Franklin*, 16 Mass. 86.

There is no evidence from which it can be inferred, that the plaintiffs held the premises in trust. But, if in trust, then only for the inhabitants of the town of North Yarmouth, for the time being, with their attendant corporate rights, duties and obligations, and not for the inhabitants of any other town, who share none of the corporate relations of the plaintiff town, since all such relations are local and territorial in their origin, design and operation. *Green* v. *Putnam*, 8 Cush. 21, 27.

The fifth section of the special law, 1849, c. 204, is unconstitutional and inoperative; and, consequently, Yarmouth had no title, or right, or interest in and to the premises. And the justification of the defendant wholly fails.

The fourth section of the same statute has been pronounced unconstitutional, in some of its provisions, in a suit between the towns of Yarmouth and North Yarmouth. *Yarmouth* v. *North Yarmouth*, 34 Maine, 411.

*Shepley & Dana* argued for defendant.

This case is to be distinguished from *Yarmouth* v. *North Yarmouth*, 34 Maine, 411, because that was a case where the power of the Legislature to alter the rights of private corporations was called in question. In the case at bar an entirely different question is presented.

The town of North Yarmouth was a public corporation; and the only question is, whether or not the Legislature, in erecting the town of Yarmouth out of the limits of North Yarmouth, as before constituted, had the right to make the provision it did in regard to the common lands.

It has been settled in this country, ever since the case of *Skerrett* v. *Taylor & als.*, 9 Cranch, 52, that the only restriction on the legislative action in regard to public corporations, is, that while they may change, modify, enlarge or restrain these corporations, they should secure the property of these corporations for the uses of those for whom *and at whose expense* it was originally purchased. See 2 Kent's Com., 5th ed. 305.

In Angell & Ames on Corp., 3d ed., page 28, it is laid down that, while private corporations, being created by an Act of the Legislature, which is regarded as a *contract*, the Legislature cannot constitutionally impair it, by annexing new terms and conditions onerous in their operation, or inconsistent with a liberal construction of the grant. The Legislature, as the trustee of the public interests, has the exclusive and unrestrained control over public corporations, and, acting as such, as it may create, so it may modify or destroy, as public exigency requires or recommends, or the public interests will be best subserved.

Here, in 1849, was the town of North Yarmouth owning certain flats and sedge banks, which had been conveyed to the town by the proprietors in 1745, for the use of the inhabitants. "The inhabitants of every town, in this State, are declared to be a body politic and corporate by the statute, but these corporations derive none of their powers from, nor are any duties imposed upon them by the common law. They have been denominated *quasi* corporations, *and their whole capacities, powers and duties are derived from legislative enactments.*" *Hooper* v. *Emery*, 14 Maine, 377.

If the Legislature had seen fit, by merely changing the lines of the town, to transfer the inhabitants of North Yarmouth into another town, without any provision preserving their

former rights, as such inhabitants, it could have done so. The Legislature has authority to change the boundaries of towns *at pleasure. Ham* v. *Sawyer*, 38 Maine, 41. But towns cannot change their boundaries. *Freeman* v. *Kenney*, 15 Pick. 44.

The Legislature, if it had seen fit, might have wholly abolished the town of North Yarmouth, for towns exist at the *pleasure* of the Legislature, and not at their own pleasure, ( *Gorham* v. *Springfield*, 21 Maine, 61,) and in that case, these flats and sedge banks, mentioned in the case at bar, would have been subject to the disposition of the Legislature.

But we have seen that the Legislature, though having the power, did not deprive the town of North Yarmouth of its rights to these banks and common lands. Though it had drawn a line through the town, yet, it provided that those residing within the limits of the old town, should retain their rights to this common property, the same as though no line had been drawn and no new name given.

Where a town owns property, it is entirely within the province of the Legislature, upon dividing that town, to provide as to the enjoyment of that property. *Brewster* v. *Harwich*, 4 Mass. 278; *Randolph* v. *Braintree*, 4 Mass. 315; *Harrison* v. *Bridgton*, 16 Mass. 16; *Windham* v. *Portland*, 4 Mass. 384; *Minot* v. *Curtis*, 7 Mass. 441; *Brunswick* v. *Dunning*, 7 Mass. 445; *Hampshire* v. *Franklin*, 16 Mass. 86.

The effect of legislative action changing the boundaries of towns, upon the property, rights and privileges of its inhabitants, are succinctly stated in this last case cited, where the Court hold the following language: — " By general principles of law, as well as by judicial construction of statutes, if a part of the territory and inhabitants of a town are separated from it, by annexation to another, or by the erection of a new corporation, the remaining part of the town, or the former corporation, retains all its property, powers, rights and privileges, and remains subject to all its obligations and duties, *unless some express provision to the contrary should be made by the Act authorizing the separation.*"

By a reference to the cases, it will be found that where the

Legislature, in altering town lines or erecting new corporations, have made no provision as to the enjoyment of the property of the old corporation, that property remains in the old corporation; but where, in the Act of alteration or separation, the Legislature has, in terms, prescribed the mode in which this property shall be enjoyed, their action is conclusive.

The question then, is, did the Legislature, in the Act of August, 1849, make such a provision as gives to the town of Yarmouth, the right to enjoy the property which belonged to North Yarmouth, at the time Yarmouth was erected out of it?

The provisions of the 5th section of the Act of August, 1849, are plain. By that section, the town of Yarmouth is to enjoy these common lands, that before the division, belonged to North Yarmouth, the same as if no division had been made. If the Legislature had the power to make provision in regard to the enjoyment of this common property, the 5th section clearly gives the right to Yarmouth to enjoy this property.

The cases already cited show, that, had the Legislature seen fit, in the Act of separation, to have provided that the inhabitants of Yarmouth should exclusively be entitled to the use of these lands which lie in her limits, it could have legally done so.

When, then, the Legislature said to the town of North Yarmouth, "we will call a part of you Yarmouth, but the rights of all the inhabitants to enjoy the common property, wherever situate, shall be preserved," the interests of the town of North Yarmouth were sufficiently consulted, and they should be content with the exclusive rights, which, under the circumstances of that case, the Court felt compelled to give them by their decision in the 34th of Maine, and suffer the defendant quietly to enjoy those rights which, but for a legislative *line*, as an inhabitant of North Yarmouth, he would have been entitled to.

The opinion of the Court was drawn up by

MAY, J. — Trespass *quare clausum* against the defendant, an inhabitant of the town of Yarmouth, for breaking into and en-

tering upon certain flats, or sedge banks, situate in said town of Yarmouth, and cutting the grass growing thereon. The alleged act of trespass is admitted, but the defendant justifies it as the servant of said town of Yarmouth, and as an inhabitant thereof, and also as having been an inhabitant of the town of North Yarmouth, before, and at the time when that part of it on which he now lives, was incorporated into the town of Yarmouth.

The incorporation of Yarmouth was Aug. 8, 1849, and it is admitted that the whole title to the *locus in quo* was in the town of North Yarmouth, up to that time, and still is, unless it has been affected by the Act incorporating said town of Yarmouth. The territory composing the new town was taken wholly from the town of North Yarmouth, and the Act of incorporation provides that " the inhabitants of said towns shall continue to hold and enjoy, in common, all the rights and privileges hitherto belonging to the inhabitants of North Yarmouth, in any and all public landings, cemeteries, gravel-pits, muscle beds, flats and fisheries of every kind, within the limits of said towns." Private Laws of 1849, c. 264, § 5.

The deed under or through which the plaintiffs claim the flats or sedge banks, upon which the defendant entered, bears date May 25, 1743. A copy or record of it, found upon an ancient book of records, purporting to be the book of records of the original proprietors of the town of North Yarmouth, is made a part of the case. It recites, among other things, " that, in consideration of the sum of five shillings, paid us by Messieurs Cornelius Soul, Jonas Mason and Edward King, selectmen and trustees of said town of North Yarmouth, there be and hereby are given, granted and sold to the said Cornelius Soul, Jonas Mason and Edward King, selectmen and trustees as aforesaid, in behalf of, and for the sole use, benefit and behoof of the present inhabitants of said town of North Yarmouth, and of all such as may or shall forever hereafter inhabit and dwell in the said town, all and singular the flats, sedge banks, muscle beds, and all other conveniences whatsoever in the said town of North Yarmouth, lying and being be-

low high water mark, with all the privileges and appurtenances thereto belonging, (except the salt marshes on Small point,) to be by the said inhabitants forever hereafter held, used, occupied and improved, in common, and that all and every the said inhabitants shall and may forever hereafter have free and full liberty to graze, feed, cut rock weed, and dig all sorts of shellfish, on or by any other way or means to use and improve the said granted premises," &c. Whether this original deed is to be regarded as a conveyance to the three individuals therein named, or to the town of North Yarmouth, as a municipal corporation, it is not now material to inquire. It is apparent, from the whole phraseology of the deed, that it was intended, by the proprietors of the territory of North Yarmouth, as a conveyance in trust, for the benefit of those persons individually who then were or might subsequently be inhabitants of the town of North Yarmouth. The idea that that town might subsequently be cut up into several distinct towns having other corporate names did not, probably, occur to the grantors. Their purpose, undoubtedly, was to grant the specific rights and privileges referred to in the deed, for the use of such inhabitants as then lived upon, or should afterwards, in all coming time, reside upon the territory of which they had been, or were then, the proprietors, and which they had conveyed or might subsequently convey to their grantees within the limits of their propriety. But whether the rights and privileges to be enjoyed, so far as the intention of the grantors can be gathered from the deed, were intended to be incident to, and dependent upon a residence within the limits of the town of North Yarmouth, as they then existed, or as they might afterwards be made to exist, it may not be essential to determine, because the case finds that the whole legal estate was in the town of North Yarmouth at the time when that portion of its territory was incorporated into the new town of Yarmouth, upon which the defendant resides. A construction that should regard all persons, resident within the old town when the new town was incorporated, as *cestui que trusts*, under the original grant, cannot be deemed inequit-

able; and, if so, whether it was competent for the Legislature to cut off any portion of the *cestui que trusts* from the enjoyment of their individual rights and privileges, without their consent, would deserve grave consideration.

In the case before us, they have not attempted to do so. The whole purpose of section five of the Act incorporating the town of Yarmouth, before recited, was to secure to the inhabitants of both towns the continuance and enjoyment of the same rights and privileges, in regard to all public landings, cemeteries, gravel-pits, muscle beds, flats and fisheries which they had before enjoyed in common, within the limits of said towns; and, it is conceded by the learned counsel for the plaintiffs, that if the Legislature had the constitutional authority to enact that section, and the same is valid and binding, then the plaintiffs cannot prevail.

The law is now well settled that, " in respect to public corporations which exist only for public purposes, as counties, cities and towns, the Legislature, under proper limitations, have a right to change, modify, enlarge or restrain them, securing, however, the property for the uses of those for whom it was purchased." 2 Kent's Com. 305; Angell & Ames on Corp., 3d ed., page 28, and authorities there cited; and such has been the uniform practice of the Legislature of this State, from its earliest existence. And the reason why this power exists, is, because the Acts by which such corporations are created are not contracts within the meaning of the constitution of the United States, or of the constitution of this State. The public good evidently requires that such corporations should be subject to legislative control. The Legislature, therefore, as the trustee of the public interests, is properly invested with unrestrained power over the existence of all public corporations.

It is also well settled that towns are public corporations. *Inhabitants of Gorham* v. *Inhabitants of Springfield*, 21 Maine, 61, and the authorities cited in defence fully establish the position that, where a town owns property, or is liable for outstanding debts, it is within the province of the Legislature,

at the time of the division of any such town, or the incorporation of a new town out of a part of its territory, to provide for an equitable appropriation or enjoyment of such property by the inhabitants of the old and new towns, or to impose upon each the payment of a share of the corporate debts. The exercise of this power, in this State and Massachusetts, has been so long continued, and so frequent, and so often acted upon by the highest judicial tribunals, as within the legitimate scope of legislative authority, that we feel no hesitancy in coming to the conclusion that the exercise of such power is constitutional and valid.

It is true that, without some legislative action in relation to the property and existing liabilities of the old town, upon its division, or the incorporation of a new town out of its territory, the old town will be entitled to the entire property, and solely answerable for such liabilities. It is said, by PARSONS, C. J., in the case of the *Inhabitants of Windham* v. *Inhabitants of Portland*, 4 Mass. 384, that "a town incorporated may acquire property, real or personal; it enjoys corporate rights and privileges, and is subject to obligations and duties. If a part of its territory and inhabitants are separated from it by annexation to another, or by the erection of a new corporation, the former corporation still retains all its property, powers, rights and privileges, and remains subject to all its obligations and duties, unless some new provision should be made by the Act authorizing the separation." The same doctrine is reiterated by C. J. PARKER, in the case of the *Inhabitants of Hampshire County* v. *Inhabitants of Franklin County*, 16 Mass. 86.

In the present case, such new provision seems to have been made, and made, too, in terms plainly indicative of the legislative will, that this defendant, and all others resident within the limits of North Yarmouth, as it then existed, should continue to enjoy, so far as relates to the flats and sedge banks in question, the rights and privileges to which he had been accustomed prior to the incorporation of the new town of Yarmouth.

We do not find, in view of the fact, that the town of North Yarmouth, at the time of the incorporation of Yarmouth, held these flats and sedge banks in trust, solely for its own inhabitants, any thing which prevented the Legislature from providing by law, upon the separation, that all the inhabitats of both towns should enjoy the rights and privileges to which they were then entitled as *cestui que trusts,* in the same manner as if no separation had taken place; or, in other words, we see nothing in the circumstances that could restrain the Legislature from providing that, for the purposes of justice and equity, both towns should be regarded as North Yarmouth, so far as should be necessary in order to give efficacy to all the rights and privileges to which all the inhabitants were then entitled, and would have continued to be entitled by virtue of the trust, if the new town had not been created. And this is in effect what has been done. For the enjoyment of these rights and privileges, provision was made that the tenancy in common which then existed, under the trust, between the inhabitants upon the whole territory of both towns, should continue in the same manner as if no separation had occurred. So far, then, as the Act of incorporation of the new town related to these rights and privileges, no separation did in fact take place, or, if it did, the old town must be regarded as holding the legal estate in trust for the inhabitants of both.

This case is wholly unlike the case between these parties, reported 34 Maine, 411, and cited for the plaintiffs, on which much reliance is placed in the argument. The distinction between the two cases is very clear. In that case the corporation which held the funds in trust was a private corporation, and, for that reason, not subject to legislative control. The attempt of the Legislature to change the direction and application of funds, so held, was very properly regarded as unconstitutional. It is very apparent from the reasoning and authorities cited in that case, that the Court would have come to a different result, if the funds, which were attempted to be divided by the Legislature, had been in the hands of the town, and not in the hands of a board of trustees, to whom they

had been conveyed in trust for specific purposes, by an Act of the Legislature of Massachusetts, passed in 1806. That case turns wholly upon the fact that the trustees of the fund were a private, and not a public corporation.

In view of all the facts in this case, we are of opinion that the defendant has established his justification, and is, therefore, entitled to a judgment in his favor. *Plaintiff nonsuit.*

TENNEY, C. J., HATHAWAY, GOODENOW, and DAVIS, J. J., concurred.