# THE MILBRIDGE & CHERRYFIELD ELECTRIC R. R. CO.,
## APPELLANTS.

### Washington.   Opinion January 6, 1902.

*Location of Street Railroad.   Appeal from Municipal Officers.   Ways.   Easements.
Eminent Domain.   Stat. 1893, c. 268, § 6.   Stat. 1899, c. 119, § 2.*

1. In an appeal based upon the alleged neglect or refusal of municipal officers to approve the proposed route of an electric railroad company, under the provisions of c. 268, § 6, of the Public Laws of 1893, as amended by c. 119, § 2, Public Laws of 1899, relating to the organization of street railroad companies, it is necessary that enough should be alleged to show that the court has jurisdiction and that the appellant had the right to apply to the municipal officers for an approval of its route.   But it is not necessary to allege all the steps by which the appellant obtained that right. The statute gives that right to every "corporation organized" thereunder. Under the statute as it existed when the appellant company was organized, as preliminary to organization, it was necessary that the Railroad Commissioners should determine that public convenience required the construction of the railroad.   But it is unnecessary to allege specifically in an appeal like this one, that the railroad commissioners had so determined, for it is necessarily implied in the expression "corporation organized" or in any expression meaning substantially the same, as in the one used in this appeal.

2. It being argued that § 1 of c. 119 of the Laws of 1899 is unconstitutional, the court without considering that question, holds that whatever might be the construction of that section, with respect to the mooted question of constitutionality, section two of the same chapter upon which the application and appeal in this case are based, stands in full force.

3. The court holds that c. 119, § 2, of the Public Laws of 1899, relating to the route and location of street railroads in the ways and streets of a town, to the approval thereof by the municipal officers, and to appeals from their action or refusal to act, is not unconstitutional as being beyond legislative authority or as being arbitrary and unjust, or as permitting the property of towns to be taken for street railroad purposes without just compensation.   The public has a mere easement in land taken and condemned for a highway, or townway.   It has the right to use it in certain ways.   Within the scope of the easement, the public which acts through the legislature, may regulate and control, may extend or diminish the public uses, as it sees fit.

The legislature has authority even to regulate and control towns themselves. For towns are but subdivisions of political government created by the

legislature.. The operation of a street railroad is an appropriate public use of a street.

While a town is charged with the performance of many duties with respect to roads, and possesses a qualified control over them, it does not own them. When the legislature authorizes a new method of use of the public easement in a way, a town has no such property interest in the way, as will entitle it to pecuniary compensation, nor has an injury been done to it, of which it can properly complain.

Exceptions by appellees.    Overruled.

This was a complaint under Stat. 1893, c. 268, § 3, as amended by Stat. 1899, c. 119, § 1, on appeal from the municipal officers of the town of Milbridge, who, it was alleged, refused and neglected to approve the route and location of the appellant's street railroad in the streets and highways of the town of Milbridge in the county of Washington for more than thirty days after the railroad company's application to them therefor was presented.

The municipal officers of Milbridge filed a demurrer to the complaint.    The demurrer was overruled at nisi prius and appellees took exceptions.

*H. H. Gray*, for appellees.

The complaint must allege that all steps leading up to the appeal and essential to it have been taken.    Such matters are jurisdictional.

The complaint is defective because it nowhere alleges that the railroad commissioners found that public convenience required the construction of the road.

If the statute is construed to give to any board or committee the absolute power, against the wishes of the town, to locate a railroad in its streets, making no provision as to compensation or expense of repairs of the streets and without right of appeal, then it is unconstitutional.    Constitution of Maine, Art. 1, §§ 20, 21.    Boone on Corporations, § 11, and cases cited.

*E. A. Hubbard, F. I. Campbell* and *J. O. Bradbury* for appellant.

The important facts to be alleged in the complaint are the request to the town officials for approval of location and their refusal, and a description of the route granted, defined by certain roads and streets.

There must be some tribunal to finally settle all the matters, and the rights of the public are well protected by the tribunal established by law.

A street railroad is as much for public convenience and public interests as for corporate profit. The public interests are well protected by the action of a lawfully constituted tribunal like that provided by the statute.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, FOGLER, PEABODY, JJ.

SAVAGE, J. This is an appeal based upon the alleged neglect or refusal of the municipal officers of Milbridge to approve of the proposed route and location of the appellant company in certain streets and ways in the town of Milbridge, and is controlled by the provisions of chap. 268, § 6, Public Laws of 1893, as amended by chap. 119, § 2, Public Laws of 1899, relating to the organization of street railroad companies.

The appellees have demurred. And they seek to sustain their demurrer first upon the ground that it is nowhere alleged in the appeal that the railroad commissioners had determined that public convenience required the construction of the railroad. The appellees' position is that such determination is a necessary prerequisite to any proceedings by the railroad company under charter or certificate of organization; that without such determination the company obtained no franchise, and no right to call upon the railroad commissioners or the municipal officers of Milbridge for an approval of its route and location; that the municipal officers of Milbridge had no jurisdiction in the premises, and no authority to act upon the railroad company's application to them; and that this court has no jurisdiction on appeal. In short, the appellees say that the determination by the railroad commissioners that public convenience requires the construction of the railroad is an essential jurisdictional fact, and, hence, that it must be averred.

It is undoubtedly true that in proceedings of this character enough must be directly alleged to show that the court has jurisdiction, *Pet-*

*tengill* v. *County Commissioners of Kennebec*, 21 Maine, 377; and if there be an omission to allege any fact without which the court would not have jurisdiction, advantage may be taken of the omission by demurrer, or upon a motion to dismiss. *Rines* v. *Portland*, 93 Maine, 227. It is also true that, under the statute in question, it was essential that the railroad commissioners should find that public convenience required the construction of the railroad, before the railroad company could do any business. It was preliminary even to complete organization. *Portland Railroad Extension Co., Appellants*, 94 Maine, 565. The amendments to this statute, chap. 187, Public Laws of 1901, do not affect this case.

Now while it is necessary for the appeal to allege enough to show that the appellant had the right to apply to the municipal officers for an approval of its route, it is not necessary to allege all the steps by which the appellant obtained that right.

The statute regulating such an application and appeal, Public Laws 1899, c. 119, § 2, gives that right to every "corporation organized" under the provisions of chapter 268 of the Public Laws of 1893. It does not require the appeal to set forth the steps which led up to the organization. It would have been sufficient for the appellant to have alleged simply that it was a "corporation organized" under the statute referred to. Under such an allegation, all things essential and preliminary to lawful organization would be presumed, so far as averment is concerned, and no specific allegation would be necessary. *McClinch* v. *Sturgis*, 72 Maine, 288.

As preliminary to the organization of such a corporation under the statute of 1899, it was essential that the railroad commissioners should find not only that public convenience required the construction of the railroad, but that all the provisions of §§ one and two of Public Laws of 1893, chap. 268, had been complied with, that is, that at least five persons, of whom a majority were citizens of this state, had made and signed proper articles of association, that not less than four thousand dollars of capital stock for every mile of road proposed to be constructed had been subscribed for in good faith by responsible parties, and five per cent paid thereon in cash to the directors, and that a majority of the directors had made the affidavit

required by section two.   The determination of all of these facts was preliminary and essential to the organization of the company.   But in an appeal like this it is no more necessary to allege as to the finding of public convenience than as to any other of the findings. They are all implied in the expression "corporation organized."

The appeal before us not only alleges that the appellant is a "corporation duly organized and established in conformity to the laws of the state of Maine," in the year 1900, but it also sets forth at length the Secretary of State's official certificate of its organization.   This certificate is the official evidence that the appellant is a "corporation organized" under chap. 268, of Public Laws of 1893, and hence authorized to make application to the municipal officers for approval of a proposed route, and to appeal, if they neglect or refuse to act. Moreover, the allegation that this electric railroad company was "duly organized and established in conformity to the laws of the State," in 1900, necessarily means that it was a "corporation organized" under the statutes of 1893 and 1899, already referred to, because there were no other laws in force at that time under which an electric railroad company could be organized.   This contention of the appellees fails.

In the next place, the appellees contend that the provisions in § 3, of c. 268, of the Public Laws of 1893, as amended by § 1, of c. 119, of the Public Laws of 1899, relating to appeals from the railroad commissioners on the question of "public convenience," were unconstitutional, and upon this hypothesis their learned counsel argues that the whole section, so far as it requires the railroad commissioners to make any finding upon the question of public convenience, was inoperative and void.   Without assenting to this proposition in the least, and without any consideration whatever of the constitutional question suggested, it is only necessary to say that, if the appellees' conclusion were correct, it would furnish one more reason for omitting from this appeal any specific reference to any finding respecting public convenience.   If the commissioners were not authorized to determine whether public convenience required the construction of the railroad, certainly no allegation concerning it, specific or implied, was necessary in the appeal from the action or

non-action of the municipal officers. Besides, whatever might be the construction of § 1, c. 119, of the Laws of 1899, upon the questions mooted, § two of the same chapter, upon which the application and appeal in this case are based, stands in full force.

Lastly, the appellees claim that the statute, Public Laws 1899, c. 119, § 2, is "arbitrary, unjust, unconstitutional and void" in that it gives a street railroad company "the right to locate in the streets of a town with no provision for compensation," to the town, "and no provision for the protection of the town in reference to laying tracks, expense of repairs, widening the streets and clearing of snow; and also gives a committee of three men power against the wishes of a town to locate in any of its streets, in any position of the street, with no right of appeal." The authorities cited by the appellees do not sustain this contention, nor do we think any can be found that will. This claim arises, probably, from a misconception of the relation which a town bears to the public ways within it. When land is taken and condemned for a way, it becomes subject to a public easement or servitude, while the title remains in the original owner. The public has entire control of the easement thus acquired, and may regulate and extend the public use, within the scope of the easement, in whatever manner it pleases. The public acts through the legislature. The legislature may thus regulate not only the method and extent of such lawful public uses of ways in towns, but it has the power to regulate and control even the towns themselves. It creates the towns as subdivisions of political government, and may dissolve them. It bestows upon them certain powers. It charges them with certain duties. These duties may be enlarged or diminished, and these powers may be increased or restrained, in accordance with the judgment of the legislature. These principles are of general acceptation. *No. Yarmouth* v. *Skillings*, 45 Maine, 133, 71 Am. Dec. 530. A town is charged with the performance of many duties with respect to roads, and it may possess a qualified control over them, but it does not own them. The legislature may increase its duties and its burdens with respect to them; it may diminish its power of control. These are matters of public policy, of which the legislature is the judge. And when the legislature

authorizes a new method of use of the public easement in such a road, a town has no such property interest in the road as will entitle it to pecuniary compensation, nor has an injury been done to it, of which it can justly complain.

It is too well settled to be questioned that the ordinary operation of a street railroad, which is a quasi public use, is a use of the street appropriate to the character of the easement or servitude which the public holds. It imposes no additional burden upon the abutter, and is no new taking of land for which he may recover additional compensation. *Briggs* v. *Lewiston & Auburn Horse Railroad Co.,* 79 Maine, 363, 1 Am. St. Rep. 316; *Taylor* v. *Portsmouth, Kittery & York Street Railway,* 91 Maine, 193, 64 Am. St. Rep. 216. It is entirely competent for the legislature to authorize such a use, and prescribe its method and extent.

While the objections to the statute which are now under consideration for the most part involve questions of policy rather than those of constitutional law, it is not improper to observe that although it is the privilege of a street railroad company to select its proposed route and location, that selection is of no avail unless it is approved by the municipal officers; or if they fail to perform their duty, and neglect and refuse to act, still the selection of the railroad company goes for naught, unless it is approved by an independent, impartial tribunal appointed by the court. Even then the selection is not effective until approved by the railroad commissioners. Public Laws of 1899, c. 119, § 2. There is no merit in this contention of the appellees.

*Exceptions overruled.*