CARLTON D. MCGARY ET AL.
*vs.*
CLYDE I. BARROWS ET AL.

Franklin.   Opinion, July 20, 1960.

*Arthur A. Peabody,* for plaintiffs.

*George A. Wathen, Asst. Atty. Gen.,*
*Joseph F. Holman,* for defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

WILLIAMSON, C. J. On report on agreed statement. This is an action for a declaratory judgment by ten taxpayers and residents of Farmington designed to test the constitutionality of the statutes under which School Administrative District No. 9, comprising the Towns of Farmington, Chesterville, and Industry, was organized. R. S., c. 107, §§ 38-50 (Uniform Declaratory Judgments Act) ; R. S., c. 41, §§ 111-A through 111-U (statutes relating to School Administrative District, sometimes hereinafter called the "Sinclair Act").

The defendants are the School Directors and the Superintendent of Schools of School Administrative District No. 9, the Maine School District Commission, the Inhabitants of the Towns of Farmington, Chesterville, and Industry, the Attorney General, the State Treasurer, and the Commissioner of Education.

The plaintiffs seek a declaratory judgment that the Sinclair Act is unconstitutional under the State and Federal Constitutions, an injunction against the exercise by the defendants of any rights, duties, or powers pursuant thereto, and such further relief as the nature of the case may require.

The issues stated in the complaint have been narrowed in the briefs and argument of counsel. Our opinion and decision is given with respect only to the issues so presented.

The parties have stipulated and agreed as follows:

"1. All the parties hereto are properly designated in their respective capacities;

"2. This action arises upon complaint for a declaratory judgment before a Justice of the Supreme Judicial Court which has been reported by agreement of the parties and order of the single Justice;

"3. The superintending school committees of the towns of Farmington, Chesterville and Industry voted to apply to the Maine School District Commission to request approval of a school administrative district composed of said towns;

"4. The application from the towns of Farmington, Chesterville and Industry was received by the Maine School District Commission. At a meeting thereof on February 19, 1959, at Augusta, Maine, the Commission found that said applicant towns were eligible for approval under the provisions of Chapter 41, Revised Statutes of 1954, as amended, and issued an order to each member of the several superintending school committees and an order to each of the municipal officers in each of the said towns to meet on March 6, 1959, at 8:00 P. M., at the Farmington High School for the purpose of determining a fair and equitable number of school directors to be elected by and to represent each participating municipality, said notice and a list

of eligible participants being sent by certified mail at least ten days prior to the date of said meeting;

"5. A record of the joint meeting of March 6, 1959, was received by the Maine School District Commission showing that it had been determined that the Town of Farmington was entitled to five (5) members, and the Towns of Chesterville and Industry were entitled to two (2) members each on the board of school directors of the proposed district;

"6. The Maine School District Commission, at a meeting held at the State House in Augusta, Maine, on March 11, 1959, found the record of said joint meeting to be in order, and further the Maine School District Commission ordered the municipal officers of the said three towns to call town meetings to vote in favor of, or in opposition to, the three articles required by and in conformity with Section 111-F, Subsection IV, Chapter 41, Revised Statutes of 1954, as amended, to form a school administrative district; said findings and order being sent by certified mail;

"7. Town meetings were called pursuant to the statutes in each of the said towns for the purposes of voting on the article relating to the formation of a school administrative district and the other articles related thereto;

"8. The Maine School District Commission received a record of the action taken in each of the said three towns showing that each article in each of the warrants received a majority vote of those voters present and voting;

"9. The Maine School District Commission at a meeting on April 9, 1959, found that the questions relating to the formation of a school administrative district composed of said three towns had been submitted to the voters and that a majority of said voters had voted in the affirmative on each article or question submitted to them, and all other steps in the formation of the district were in order and

in conformity with the law; the Maine School District Commission assigned number 9 to the area comprised of the said three towns and ordered the Secretary of the Commission to issue a certificate of organization, and ordered said certificate to be delivered to the directors of the School Administrative District No. 9 on the day the directors organized and assumed their duties. The Maine School District Commission on April 9, 1959, ordered the Secretary to notify the municipal officers of the said three towns to call special town meetings within 60 days to elect the number of directors to which each municipality was entitled. Said notice was sent by certified mail. The certificate of organization was issued on April 9, 1959, without notice or hearing;

"10.   Each of the said three towns called a town meeting and elected the allotted number of directors to represent said town in School Administrative District No. 9 and filed returns showing the manner and method of election and the names and addresses of each director elected thereat;

"11.   At a meeting of the Maine School District Commission held at the State Office Building in Augusta, Maine, on June 10, 1959, the Commission ordered *and* elected school directors to hold their organizational meeting on July 1, 1959, said notice being given pursuant to Section 111-F, Chapter 41, Revised Statutes of 1954, as amended, for the purpose of determining the length of their terms, subscribing to their oaths of office, and assuming the management and control of the operation of all the public schools within the area of School Administrative District No. 9;

"12.   A meeting of the school directors was held as ordered on July 1, 1959, and a certificate of organization of the three town district was delivered to said directors. Said directors having qualified for office on that date have exercised their duties and offices as school directors since that time;

"13. The Maine School District Commission filed a certificate of organization of School Administrative District No. 9 with the Secretary of the State of Maine pursuant to the statute;

"14. At a special session of the Ninety-Ninth Legislature held in January, 1960, Chapter 203 of the Private and Special Laws of 1959 was enacted which purported to validate and reconstitute School Administrative District No. 9. Said Act has now become effective;

"15. It is further agreed that the Supreme Judicial Court sitting as a Law Court is to make a final decision in the matter."

It is unnecessary to set forth the Sinclair Act with its detailed provisions. Broadly stated, the Legislature has provided machinery for the formation of school administrative districts comprising two or more municipalities, on vote of the municipalities, subject to approval of the School District Commission, an administrative agency operating under principles and standards set forth in the Act.

### School District Commission

"Sec. 111-A. Declaration of policy. It is hereby declared to be the policy of the State to encourage the development of school administrative units of sufficient size to provide a more equalized educational opportunity for pupils, to establish satisfactory school programs, and achieve a greater uniformity of school tax rates among the school administrative districts and a more effective use of the public funds expended for the support of public schools."

\* \* \* \* \* \* \* \* \*

"Sec. 111-G. Organization. When the residents of each of the municipalities have voted upon the formation of the proposed School Administrative District and all of the other questions submitted therewith, the clerks of each of the municipalities shall make a return to the School Dis-

trict Commission in such form as the commission shall determine. If the commission finds that a majority of the residents within each of the municipalities involved, voting on each of the articles or questions submitted to them, have voted in the affirmative, and have elected the necessary school directors to represent each municipality, and that all other steps in the formation of the proposed School Administrative District are in order and in conformity with law, the commission shall make a finding to that effect and record the same upon its records. The School District Commission shall further assign a number to each School Administrative District so formed in the order of their formation in the following form, 'School Administrative District No.    ,' which shall be the official title of the School Administrative District.

"The Commission shall, immediately after making its findings, issue a certificate of organization in such form as the commission shall determine. The original certificate shall be delivered to the school directors on the day that they organize and a copy of said certificate, attested by the secretary of the commission, shall be filed and recorded in the office of the Secretary of State. The issuance of such certificate by the School District Commission shall be conclusive evidence of the lawful organization of the School Administrative District. The School Administrative District shall not be operative until the date set by the School District Commission under section 111-J.

"Sec. 111-H.    Transfer of property and assets.
. . . . .

"Where in the formation of a School Administrative District the School Administrative District has assumed the outstanding indebtedness of any municipality, school district or community school district, the directors of the School Administrative District shall be entitled to the use of any sinking fund or any other moneys that have been set aside by the municipality, school district or com-

munity school district for the payment of any or all of the indebtedness which has been assumed by the School Administrative District notwithstanding any other provision of any act of the Legislature or any provision of any trust agreement to the contrary, provided that the school directors shall only use the money so set aside for the purpose of retiring any or all of the assumed indebtedness for which it was previously dedicated."

\* \* \* \* \* \* \* \* \* \*

"**Sec. 111-M. Application of general law.** All schools operated by School Administrative Districts, when established, shall be considered the official schools of the participating municipalities and all provisions of the general law relating to public education shall apply to said schools. Special courses and other bases for allocations to municipalities because of these schools shall be paid by the State directly to the treasurer of the administrative districts."

\* \* \* \* \* \* \* \* \* \*

"**Sec. 111-R. Operational date of the School Administrative District; teachers' and superintendents' contracts.** Notwithstanding the prior issuance of a certificate of organization, a School Administrative District shall not be in operation and shall not exercise any of its powers granted until the date set by the School District Commission, as provided in section 111-J. On the date so set, the School Administrative District shall become operative and the school directors shall assume the management and control of the operation of all the public schools within the district and the municipalities, coterminous school districts or community school districts within said district on and after said date shall have no responsibility for the operation or control of the public schools within their respective jurisdictions, . . ."

This section also provides for the transfer of school funds and assignment of contracts of teachers and superintendents of schools to the School Administrative District.

In considering the constitutionality of statutes, we keep in mind the principles succinctly stated by the late Chief Justice Fellows in *Baxter* v. *Waterville Sewerage District,* 146 Me. 211, 214, 79 A. (2nd) 585:

> "In passing upon the constitutionality of any act of the Legislature the court assumes that the Legislature acted with knowledge of constitutional restrictions, and that the Legislature honestly believed that it was acting within its rights, duties and powers. All acts of the Legislature are presumed to be constitutional and this is 'a presumption of great strength.' *State v. Pooler,* 105 Me. 224, 228; *Laughlin v. City of Portland,* 111 Me. 486; *Village Corporation v. Libby,* 126 Me. 537, 549. The burden is upon him who claims that the act is unconstitutional to show its unconstitutionality. *Warren v. Norwood,* 138 Me. 180. Whether the enactment of the law is wise or not, and whether it is the best means to achieve the desired result are matters for the Legislature and not for the court. *Kelley v. School District,* 134 Me. 414; *Hamilton v. District,* 120 Me. 15, 20."

Illustrative cases are *State of Maine* v. *Vahlsing, Inc.,* 147 Me. 417, 430, 88 A. (2nd) 144 (potato tax) ; *Nat. Bk., Boston* v. *Turnpike Authority,* 153 Me. 131, 171, 136 A. (2nd) 699 (bonds-impairment of contracts) ; *Martin* v. *Maine Savings Bank et al.,* 154 Me. 259, 147 A. (2nd) 131 (Maine Industrial Building Authority Act).

First issue: The plaintiffs argue that the Act violates Article VIII of the State Constitution in that towns thereby escape an obligation to support and maintain public schools and are deprived by Sec. 111-R of responsibility for the operation and control of public schools within their jurisdiction. Article VIII of the Maine Constitution reads in part:

> "A general diffusion of the advantages of education being essential to the preservation of the

rights and liberties of the people; to promote this important object, the legislature are authorized, and it shall be their duty to require, the several towns to make suitable provision, at their own expense, for the support and maintenance of public schools; . ."

The plaintiffs would turn Article VIII into a prohibition upon the exercise of legislative power in support of education. It has long since been established that Article VIII is "mandatory not prohibitory," and that it is not a limitation upon legislative power in the field of education. The Legislature indeed cannot be compelled to perform its duty under Article VIII. The responsibility for compliance rests with the Legislature. *Sawyer* v. *Gilmore,* 109 Me. 169, 83 A. 673; *Opinion of Justices,* 68 Me. 582; *Call* v. *Chadbourne,* 46 Me. 206, 222.

The power of the Legislature to create quasi-municipal corporations for educational purposes separate and distinct from municipalities is not questioned. *Kelley* v. *School District,* 134 Me. 414, 187 A. 703; *Knapp* v. *Swift River School District,* 152 Me. 350, 129 A. (2nd) 790; *North Yarmouth* v. *Skillings,* 45 Me. 133; 78 C. J. S., *Schools and School Districts* § 27; 47 Am. Jur., *Schools* § 12 *et seq.*

"Municipalities providing for their public school system by the medium of School Administrative Districts will nevertheless thereby be making suitable provision for the support and maintenance of public schools, and by their proportional contributions to the expense incurred by such Districts will be in compliance with both the letter and spirit of the Constitution. The Legislature, by making provision therefor, will have satisfied the mandatory constitutional requirements imposed upon it." *Opinion of Justices,* 153 Me. 469, 474, 145 A. (2nd) 250.

There is no violation of Article VIII by the legislation here under study.

Second issue: The plaintiffs contend that under Sec. 111-G there is an unlawful delegation to the School District Commission in violation of the constitutional provisions relating to the separation of powers and the delegation of legislative power under our State Constitution. With this view we do not agree.

> "SECTION 1. The powers of this government shall be divided into three distinct departments, the legislative, executive and judicial.

> "SECTION 2. No person or persons, belonging to one of these departments, shall exercise any of the powers properly belonging to either of the others, except in the cases herein expressly directed or permitted."

Article III, Maine Constitution.

> "SECTION 1. The legislative power shall be vested in two distinct branches, a House of Representatives, and a Senate, each to have a negative on the other, and both to be styled the Legislature of Maine, but the people reserve to themselves power. . ."

Article IV, Part First, Maine Constitution.

The School District Commission is an administrative agency designed by the Legislature to administer the Sinclair Act and thus to make effective the declaration of policy in Sec. 111-A. The Commission exists "for the purpose of promoting, developing and adjusting a state plan for the creation of efficient School Administrative Districts throughout the State and for the purpose of approving applications for the organization of School Administrative Districts, . . ." (Sec. 111-B.)

The desirability and practical need of some such agency, whether it is a board, commission or officer to administer the Act is apparent. The Legislature cannot be expected to investigate each situation throughout the State relating

to the new school policy and to make the findings required to meet the standard set by the Legislature.

That the Legislature has the power to undertake this task and the right to exercise this power at any time or in any case, does not deny the authority of the Legislature to place important responsibilities in administration upon an agency such as the School District Commission. The problem presented by the second issue arises it may be noted solely because the Legislature has seen fit to establish a general law for the organization of School Administrative Districts under standards to be applied by the School District Commission for a five year period and thereafter by the State Board of Education. (Sec. 111-B.)

Under Sec. 111-G, if the Commission finds that a majority within each municipality voted upon each of the articles submitted in the affirmative and have elected the necessary school directors, and that all other steps in the formation of the proposed School Administrative District are in order and in conformity with law, then the Commission is charged with making a finding to that effect and thereupon issuing a certificate of organization. "The issuance of such certificate by the School District Commission shall be conclusive evidence of the lawful organization of the School Administrative District."

On examination of each of the steps in the formation of School Administrative Districts requiring action by the School District Commission, we conclude that there is no improper delegation of legislative power under the statute. The Commission does not make law. It administers the established law.

In determining the majority vote on returns from the clerks of the municipalities, the School District Commission is without question, as urged by the plaintiffs, performing the duties usually associated with a canvassing board. To

inspect returns and declare the result of an election is a task administrative and not judicial in nature. In *Campbell, Petr.* v. *Watts,* 71 Me. 380, it was made clear that a canvassing board was an administrative and not a judicial body, and such is the case of the School District Commission.

We need not here consider the rights, whatever they may be, of individuals to go behind the returns in testing the right to public office, as in *Campbell, Petr.* v. *Watts, supra.* This is not such an election.

The Legislature, as we have indicated, has the authority to create School Administrative Districts directly by its own act without the intervening services of an administrative body. There is no requirement under the Constitution of Maine for the submission of the question of formation of a School Administrative District to popular vote in the municipalities within the proposed District. There is no constitutional obligation to give this measure of home rule to the people of the communities involved. The same principle is clearly enunciated in *People* v. *Deatherage,* 401 Ill. 25, 81 N. E. (2nd) 581.

It follows, in our view, that there can therefore be no valid objection to the act of the Legislature in providing that the determination of the outcome of the referendum be made by the Commission finally and without appeal. Like principles are applicable to the election of the "necessary school directors." We are here concerned only with the election of school directors at the outset of the organization of the School Administrative District, that is to say, the school directors to whom, to use words of the statutes, "the original certificate shall be delivered to the school directors on the day that they organize." (Sec. 111-G.) It is to be noted that the time, place, and date of the first meeting of directors are set by the School District Commission. (Sec. 111-J.)

Turning to the phrase "and that all other steps in the formation of the proposed School Administrative District are in order and in conformity with law," we find the technique repeatedly used in the organization of various types of corporations under general laws. For example, under the business corporation law the certificate of organization must be "certified to be properly drawn and signed and to be conformable to the constitution and laws" by the attorney general. R. S., c. 53, § 10.

The plaintiffs raise no constitutional issues upon the sufficiency of the criteria or standards under the Sinclair Act for the establishment of School Administrative Districts. Stated differently, there is no objection that there are not sufficient guides in the statute to determine whether a district should be organized under the Act. See *Opinion of Justices,* 153 Me. at p. 471, in which the justices had before them the Legislative Document forming the basis of the Sinclair Act.

In short, the issue involves the constitutional authority of the School District Commission to approve the corporate organization of School Administrative Districts, and not the sufficiency of the criteria to be met for the formation of School Administrative Districts found in Sec. 111-E, or elsewhere in the Sinclair Act apart from Sec. 111-G.

The remaining objection to Sec. 111-G relates to the conclusive effect of the certificate of organization. Here again we see no objection under the constitution to the action of the Legislature in making such a certificate conclusive evidence of the fact of incorporation.

We have seen that the Legislature could have created this or any other School Administrative District by special act. Here the Legislature gives to the School District Commission (and later to the State Board of Education) the authority to speak finally for the State without right of ap-

peal on the question of the organization of each School Administrative District. It is the issuance of the certificate that completes the organization of a School Administrative District.

The purpose of such provision is plain. It is to make clear and certain to all who may deal with School Administrative Districts that there are no hidden difficulties in the organization and that all may consider that the necessary statutory steps have been duly and properly taken.

But it is said the opportunity for fraud or mistake is great. We are comforted by the thought that we may presume all officers of government will act faithfully and that under the Sinclair Act fairly administered there is no reason to believe that facts which should prevent the issuance of a certificate of organization will not come to light before final action. That there is risk in this procedure may be admitted. On balance, between the possible harm and the understandable benefits of certainty in establishing the legal organization of a School Administrative District at the outset the Legislature chose the benefits of certainty.

The practice of giving to a certificate of organization the force of conclusive evidence of the fact certified is not new. Since at least 1876 Legislatures have repeatedly made use of this technique where it would appear the public interest is advanced by certainty.

The certificate of the secretary of state is by statute conclusive evidence of the organization and existence of several kinds of corporations. Steam railroads, R. S., c. 45, § 3, first enacted in Laws 1876, c. 120, § 3; street railroads, R. S., c. 47, § 4, first enacted Laws 1893, c. 268, § 3 ("This certificate is the official evidence that the appellant is a 'corporation organized. .' " *Milbridge* v. *Cherryfield Elec. R. R. Appellant,* 96 Me. 110, 114, 51 A. 818) ; mutual insurance companies, R. S., c. 60, § 42, first enacted Laws 1876, c. 144,

§ 9; trust companies, R. S., c. 59, § 100, first enacted Laws 1907, c. 96, § 5; fraternal beneficiary associates, R. S., c. 60, § 173.

In the case of a bank merger resulting in a trust company (R. S., c. 59, § 149), the certificate of the bank commissioner "shall be conclusive evidence of the merger and of the correctness of all proceedings therefor in all courts and places, . . "

In the Community School District law we find the obvious source of the provision under discussion. The sentence quoted below was not in the law as first enacted in Laws 1947, c. 357, but was added by amendment in Laws 1949, c. 249.

> "If the secretary of state finds that the community school district has been organized and the trustees thereof elected or appointed, according to law, he shall issue to it a certificate of organization and such certificate shall be conclusive evidence of the lawful organization of the community school district and of the election or appointment of the trustees thereof." (R. S., c. 41, § 113.)

The intention of the Legislature is plain and certain, that the certificate of organization issued by the School District Commission shall be conclusive evidence of its lawful organization.

The question before us is whether the Legislature has exceeded its constitutional powers and this we find was not the case. We hold, therefore, there are no constitutional objections to the exercise by the School District Commission of the powers set forth in Sec. 111-G, and further, that the lawful organization of School Administrative District No. 9 is conclusively evidenced by the certificate of the School District Commission issued under Sec. 111-G.

Third issue: Sec. 111-G does not in our opinion violate "due process." ". . . nor shall any State deprive any person

of life, liberty, or property, without due process of law; ..." Fourteenth Amendment, U. S. Constitution.

The plaintiffs contend that findings made under Sec. 111-G without notice, hearing, or right of appeal and the issuance of a certificate which is conclusive evidence of organization, deprive them of property without "due process." They fail to establish what property is lost under the procedure established by the statute.

We are not here directing our attention to determine whether School Administrative District No. 9 has properly and lawfully exercised powers given to it by the Legislature. The problem reaches only the constitutionality of the statute under which School Administrative District No. 9 was organized.

The controlling principle is stated as follows:

"A school district, being an auxiliary of the state for purposes of education, the legislature may provide for its creation, control, and regulation, without violating the due process guaranty, with respect to the property rights of the district or of property owners therein." 16A C. J. S., *Constitutional Law*, § 604 (b).

The interest of the taxpaying inhabitants in the creation and establishment of a school district is not a property interest. Our court in *Kelley* v. *School District, supra,* at p. 420, in upholding an act creating a school district said:

"A school district is a public agency or trustee established to carry out the policy of the State to educate its youth. The Legislature may change such agencies, and control and direct what shall be done with school property. The length of time this district may exist is, because capable of being made certain, definite from the beginning."

* * * * * * * * * *

"School property is public property, the property of the incorporated district and not of the taxpayers residing within it."

Having no property interests at stake in the creation of the District, the plaintiffs cannot be said to have suffered a deprivation of property through the organization procedures under Sec. 111-G. See *Baxter* v. *Waterville Sewerage District, supra; North Yarmouth* v. *Skillings, supra.*

Fourth issue: The plaintiffs assert that the following paragraph of Sec. 111-H impairs the obligation of contracts in violation of Article I, Sec. 10 of the U. S. Constitution, and Article I, Sec. 11 of the Maine Constitution.

> "Where in the formation of a School Administrative District the School Administrative District has assumed the outstanding indebtedness of any municipality, school district or community school district, the directors of the School Administrative District shall be entitled to the use of any sinking fund or any other moneys that have been set aside by the municipality, school district or community school district for the payment of any or all of the indebtedness which has been assumed by the School Administrative District notwithstanding any other provision of any act of the Legislature or any provision of any trust agreement to the contrary, provided that the school directors shall only use the money so set aside for the purpose of retiring any or all of the assumed indebtedness for which it was previously dedicated."

The pertinent constitutional provisions with which we are concerned are as follows:

> "No State shall . . . pass any . . . law impairing obligations of contracts. . ." U. S. Constitution, Article I, § 10.

> "The legislature shall pass no bill of attainder, *ex post facto* law, nor law impairing the obligation of contracts. . ." Maine Constitution, Article I, § 11.

No attack is made upon the other provisions of Sec. 111-H, which provide for the transfer of existing school prop-

erty and buildings to the School Administrative District, the assignment of leases with the Maine School Building Authority to the School Administrative District with assumption of duties and liabilities, and for the raising, appropriation, transfer, and expenditure of moneys for capital outlay purposes.

In voting upon the question of the formation of the proposed School Administrative District, each municipality must vote "To see if the municipality will vote to authorize the district to assume full responsibility for amortizing the following listed indebtedness now outstanding in the municipalities and school districts comprising the School Administrative District under consideration." (Sec. 111-F-IV.)

The intention of the Legislature is clear, namely, that sinking funds and other moneys dedicated for payment of particular indebtedness assumed by the School Administrative District be used for such purposes and none other. We cannot, however, anticipate issues, constitutional or otherwise, which might arise in the application of this provision of the statute to a particular set of facts. No given situation is presented on the record for our consideration.

Fifth issue: It is unnecessary to consider the issue raised relating to the effect of P. & S. L., 1959, c. 203, entitled "An Act to Reconstitute School Administrative District No. 9." We have held in our discussion of the other issues that there are no constitutional prohibitions against the organization of a School Administrative District under the Sinclair Act, and that therefore School Administrative District No. 9 was lawfully organized.

Whether School Administrative District No. 9 has acted lawfully within the Sinclair Act or any other statutes subsequent to its organization does not raise problems for decision on this complaint. We express no opinion upon the effect of the 1959 statute in validating such acts.

The plaintiffs have failed in their attack upon the organization of School Administrative District No. 9. They are not entitled to the relief prayed for. Under the terms of the report the Law Court shall render such decision as the rights of the parties require. Accordingly, the entry will be

*Cause remanded for entry of a judgment in accordance with this opinion without costs.*