HENRY PEAVY, ET AL.
*vs.*
CHESTER R. NICKERSON, ET AL.

Waldo.    Opinion, November 8, 1962.

*Judson A. Jude,* for the Plaintiffs.

*George A. Wathen,* for the Defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SULLIVAN, J.    The plaintiffs are 14 taxable inhabitants of School Administrative District No. 3 which has 11 constituent towns.    The defendants are the directors of such district.    The allegations, grievance and quest for relief of the plaintiffs are recited in their complaint as follows:

"3.    Pursuant to the provisions of Section 111-F (IV) of Chapter 41, of the Revised Statutes of Maine, 1954, as amended, the School District Commission of the State of Maine on July 31, 1958, ordered the Municipal Officers of nine towns in the said County of Waldo to call town meetings to consider several articles or questions incident to the organization of a school administrative district.

4.    Notwithstanding that Section 111-G of the said Chapter 41 authorized the said School District Commission to issue a certificate of organization for a school administrative district only if the Commission found

(a)    that at each town meeting a majority of the residents voting on each of the articles or questions had voted in the affirmative and

(b)    that all other steps in the formation of the proposed school administrative district were in order and in conformity with law, nevertheless on August 15, 1958, the said School District Commis-

sion summarily made its findings and issued a certificate of organization for School Administrative District No. 3, embracing the said nine towns, without notice and without hearing as were required in such an adjudicative process by the Fourteenth Amendment to the Constitution of the United States.

5. Subsequently, on March 5, 1959, the said School District Commission issued a new certificate of organization for the purported School Administrative District No. 3, superseding the original certificate and adding two more towns to the original nine towns; this action likewise being taken without the required notice and without the required hearing.

6. Without authority of law the said Defendants have been using and exercising the rights and powers of school directors, and they are now undertaking to borrow the sum of seven hundred and thirty thousand dollars ($730,000) upon the credit of the putative School Administrative District No. 3 and the eleven towns which it purportedly embraces.

WHEREFORE the Plaintiffs demand that the said Defendants be permanently enjoined from using and exercising the rights and powers of school directors and from borrowing the said sum of seven hundred and thirty thousand dollars ($730,000), or any portion thereof, upon the credit of the putative School Administrative District No. 3 and the eleven towns which it purportedly embraces."

Defendants by their answer admit the facts recited by the plaintiffs in their complaint but deny that the 14th Amendment to the United States Constitution necessitated notice and hearing on the part of the School District Commission as a prelude to issuance by that commission of a certificate of organization to School Administrative District No. 3. Defendants negate that the directors of such District have acted or are functioning without competent authority and

interpose additional defenses of *res adjudicata* and of estoppel by judgment. Defendants invoke the curative provisions of P. & S., 1959, c. 221.

The case was heard by a Justice of the Superior Court who decided in favor of the defendants. The justice amongst other holdings ruled that there had been no lack of due process as plaintiffs contend, that P. & S., 1959, c. 221 had validated School Administrative District No. 3 as of March 5, 1959 and that plaintiffs' arguments to disprove the legitimacy of School District No. 3 had been repudiated by this court in fully considered precedents of relatively recent rendition. Plaintiffs have appealed from the decision of the justice and protest as error the three rulings just enumerated. Plaintiffs included other points on appeal but if the justice was correct as to the foregoing three, plaintiffs obviously cannot prevail here.

The issuance of the certificate of organization to School Administrative District No. 3 by the School District Commission was:

> " - - - - conclusive evidence of the lawful organization of the School Administrative District."
> P. L., 1957, c. 443, § 2, Sec. 111-G.

In *McGary* v. *Barrows* (1960), 156 Me. 250 this court stated its maturely considered conclusions which are controlling here. We quote:

> @ 259 "The power of the Legislature to create quasi-municipal corporations for educational purposes separate and distinct from municipalities is not questioned. Kelley v. School District, 134 Me. 414, 187 A. 703; Knapp v. Swift River School District, 152 Me. 350, 129 A. (2nd) 790; North Yarmouth v. Skillings, 45 Me. 133; 78 C. J. S.. Schools and School Districts § 27; 47 Am. Jur., Schools § 12 et seq.

404

@ 262   The Legislature, as we have indicated, has the authority to create School Administrative Districts directly by its own act without the intervening services of an administrative body. There is no requirement under the Constitution of Maine for the submission of the question of formation of a School Administrative District to popular vote in the municipalities within the proposed District. There is no constitutional obligation to give this measure of home rule to the people of the communities involved.

@ 263   The remaining objection to Sec. 111-G relates to the conclusive effect of the certificate of organization. Here again we see no objection under the constitution to the action of the Legislature in making such a certificate conclusive evidence of the fact of incorporation.

We have seen that the Legislature could have created this or any other School Administrative District by special act. Here the Legislature gives to the School District Commission (and later to the State Board of Education) the authority to speak finally for the State without right of appeal on the question of the organization of each School Administrative District. It is the issuance of the certificate that completes the organization of a School Administrative District.

@ 264   The purpose of such provision is plain. It is to make clear and certain to all who may deal with School Administrative Districts that there are no hidden difficulties in the organization and that all may consider that the necessary statutory steps have been duly and properly taken.

@ 265   The intention of the Legislature is plain and certain, that the certificate of organization issued by the School District Commission

shall be conclusive evidence of its lawful organization.

The question before us is whether the Legislature has exceeded its constitutional powers and this we find was not the case. We hold, therefore, there are no constitutional objections to the exercise by the School District Commission of the powers set forth in Sec. 111-G, and further, that the lawful organization of School Administrative District No. 9 is conclusively evidenced by the certificate of the School District Commission issued under Sec. 111-G.

Third issue: Sec. 111-G does not in our opinion violate 'due process.' ' - - - nor shall any State deprive any person of life, liberty, or property, without due process of law; - - -' Fourteenth Amendment, U. S. Constitution.

@ 266 The interest of the taxpaying inhabitants in the creation of a school district is not a property interest - - - -

@ 267 Having no property interests at stake in the creation of the District, the plaintiffs cannot be said to have suffered a deprivation of property through the organization procedures under Sec. 111-G. See Baxter v. Waterville Sewerage District, supra (146 Me. 211, 79A. (2nd) 585) ; North Yarmouth v. Skillings, supra (45 Me. 133)."

The Legislature by P. & S. Laws of 1959, c. 221, effective April 29, 1960, enacted a validating law declaring that the 11 municipalities comprising School Administrative District No. 3:

" - - - - are hereby constituted to be and to have been since March 5, 1959 a School Administrative District, known as School Administrative District No. 3, with all of the powers, privileges and franchises granted to School Administrative Districts - - - - "

That law also confirmed in their office the school directors, past and incumbent, of such Administrative District No. 3 and validated all of their past official proceedings of record and their consequential actions personal and vicarious.

In *Elwell* v. *Elwell* (1960), 156 Me. 503, plaintiffs other than those of the instant case litigated the same issue as to whether this, very controverted certificate of organization of School Administrative District No. 3 is lawful. Those earlier plaintiffs likewise contended that such certificate of organization had been issued illicitly, without notice or hearing. This court affirmed the reasoning and decision of *McGary* v. *Barrows, supra,* as convincing and authoritative.

Finally, in *Blackstone* v. *Rollins* (1961), 157 Me. 85, 91, it was said:

> "This court decided in the very recent case of *McGary* v. *Barrows,* 156 Me. 250, 163A (2nd) 747, that the Legislature was within its prerogative when it provided that a certificate of organization issued by the School District Commission shall be conclusive evidence of its lawful organization. This formal expression of applicable law was reiterated in the recent opinion of this court in *Elwell* v. *Elwell,* 156 Me. 503, 167A (2nd) 18.
>
> ---------------------------------
>
> It having been decided in the *McGary* case, as well as in several other decisions of this court that the Legislature may create school districts without even referring the matter to the people of the communities involved, it inevitably follows that the Legislature may validate, reconstitute and establish a school district, the original organization of which may be clouded with failure of strict compliance with statutory provisions relating to procedure. In the case of a school administrative district, organized under the Sinclair Act, such legislative act of validation precludes successful attack against all acts relating to organization occurring prior to the date of the certificate of organ-

ization issued by the Maine School District Commission."

In the case at bar no authority has been cited or theory advanced, nor have we independently discovered such, to unsettle us in the reasoned convictions which this court has unanimously expressed in its three recent decisions reviewed above.

The mandate shall be:

*Appeal denied.*